## Case No. 129.

### The ALASKA.

[3 Ben. 391.][1]

District Court, E. D. New York. Sept., 1869.

PILOTAGE—JURISDICTION—TENDER.

1. Where a pilot boarded a ship, some thirty miles from Barnegat, and the master of the ship proposed that his employment should not commence till the vessel reached pilot ground, whereupon the pilot went to bed, and was called when Sandy Hook hove in sight, and then took charge of the vessel, and thereafter libelled her for the amount of offshore pilotage, awarded by the laws of the state of New York: held, that the court had jurisdiction of the action, [as it was on a maritime contract.]

2. That the libellant could only recover for inshore pilotage, and that, as the amount of inshore pilotage had been tendered before suit, the decree must be without costs.

[3. Cited in Ex parte Easton, 95 U. S. 76, as authority for holding a contract for wharfage to be a maritime contract.]

In admiralty. This was an action to enforce an alleged lien upon the American bark called the "Alaska," for pilotage. The libellant, who was a New Jersey pilot, boarded the bark when some thirty miles south southeast from Barnegat, bound to New York. He did not, however, take charge until Sandy Hook light was just in sight, from which place he acted as pilot until the vessel was moored in the port of New York, which was her home port. For this service he presented a bill for off-shore pilotage. The owners of the vessel refused to pay off-shore pilotage, but, before suit, tendered the regular in-shore pilotage, which was refused, whereupon this action was brought. [Decree by libellant for amount of in-shore pilotage.]

Emerson, Goodrich & Wheeler, for libellant.

F. A. Wilcox, for claimant.

BENEDICT, District Judge. The objection which has been taken to the jurisdiction of the court is not maintainable. A court of admiralty has undoubted jurisdiction to entertain a proceeding in rem against a ship, whether owned in this state or elsewhere, to enforce payment for services actually rendered to such ship in piloting her from sea. If such a service be not maritime, I can conceive of none. The Rob. J. Mercer, [Case No. 11,891;] Hobart v. Drogan, 10 Pet. [35 U. S.] 120.

Nor can the existence of state pilot laws, regulating pilotage service in and out of the port of New York, have any effect to change the nature of the service. The states cannot, by legislating in regard to services clearly maritime, make them other than what they are. Statutes of the states regulating the appointment and compensation of pilots, have been held to be valid laws for such purposes, which can be enforced in the tribunals of the states, and are to be looked to as determining the amount of the compensation to be allowed pilots who hold offices under them, whenever the claim to such compensation may be advanced; but they can have no effect to limit the jurisdiction over all causes of admiralty and maritime jurisdiction, which, under the constitution, has been conferred upon the district court of the United States. Hobart v. Drogan, 10 Pet. [35 U. S.] 120.

The libellant is, therefore, entitled to maintain his action, founded as it is upon a maritime contract. But upon the facts, as they appear, he is not entitled to recover the full amount which he has claimed. The evidence shows that the pilot, when he went on board the vessel, assented to the proposition of the master, that his employment should not commence until the vessel reached pilot ground. He accordingly went to bed, was waked when Sandy Hook light hove in sight, and then first took charge as pilot.

Under such a state of facts, he must be deemed to have first offered his services as pilot when the vessel reached pilot ground, and to have waived any right which he might have had, if he had held the master to accept or refuse his services when the ship was first hailed.

The decree will, accordingly, be for the amount of the in-shore pilotage, and as the tender of that amount before suit brought is admitted, the decree must be without costs.