## Case No. 7,359.

### The JOHN M. WELCH.

[9 Ben. 507;[1] 24 Int. Rev. Rec. 207.]

District Court, E. D. New York.   May 8, 1878.[2]

J. J. Allen, for libellant.
E. D. McCarthy, for claimants.

BENEDICT, District Judge. This is an action in rem to recover wharfage. The defence interposed raises three questions: First, whether a contract for wharfage is a maritime contract, and so within the jurisdiction of the admiralty; second, whether, by the maritime law of the United States, a lien upon the vessel arises out of such a contract; third, whether, if the court has jurisdiction to enforce a lien upon the vessel for wharfage, the statute of the state of New York, which fixes the rates of wharfage to be charged in the port of New York, can be resorted to for the purpose of determining the amount of such lien.

The first and second of these questions, passed on by this court in former cases, have been set at rest by the determination of the supreme court in a proceeding taken by the respondents to obtain a writ of prohibition in this very action. Ex parte Easton, 95 U. S. 68.

It has been supposed by some that, in the proceeding referred to, the supreme court, on page 75 of the opinion, by implication decides against the existence of a lien for wharfage in the case of a domestic vessel. But such cannot have been the intention. The case before the supreme court was that of a domestic vessel, and the libel claimed a lien by the maritime law alone, without any reference whatever to the statute of New York, or to any claim of right based thereon. Not only

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]
[2] [Reversed in 2 Fed. 364.]

did the pleadings show the vessel to be domestic, but the brief submitted to the supreme court, which has also been submitted as the argument of the respondent upon this hearing, contains the expression, "Attention is called to the fact that the boat John M. Welch is a domestic craft," and again, "The petitioners, however, are citizens of New York, and the boat is a domestic vessel;" and the petition for prohibition, upon which the application was based, averred that "the laws of the state of New York give no such lien." There is therefore no room to doubt that the case was understood by the supreme court to present the question whether the contract of wharfage by the maritime law of the United States gives rise to a lien upon the vessel. It cannot be denied that the proposition stated by the court on page 75 of the opinion is limited to the question of a lien for wharfage by the maritime law upon a foreign vessel, but that question was not the question presented by the case before that court. The question of a lien for wharfage upon a domestic vessel, was the question presented to the court for its decision; and the opinion of the court upon that question is to be found, not on page 75, but on page 77 of the opinion, where the law is declared without exception to be not only that the contract for wharfage is a maritime contract, but also that a maritime lien arises in favor of the wharfinger against the vessel for the payment of reasonable and customary charges for the use of his wharf.

This determination by the supreme court of the United States therefore, leaves no room to raise again the question decided by this court in the case of The Kate Tremaine [Case No. 7,622], cited apparently with approval by the supreme court,—[Ex parte Easton] 95 U. S. 76,—whether the rule applied to the demands of material men against a domestic vessel, is to be applied to demands for wharfage.

There is, then, left but the single question as to the constitutionality of the statute of the state of New York by which rates of wharfage at wharves in New York and Brooklyn are fixed. This question was also argued before the supreme court upon the motion for a prohibition, but it was left by the court to be decided as one of the questions of the cause, without any intimation of an opinion in regard to it.

A similar question was raised and decided by this court in the case of The Ann Ryan [Case No. 428], where the effect and validity of the wharfage act of 1870 was called in question. That act has since been amended; but the present statute passed May 21, 1875 (Laws N. Y. 1875, c. 405), seems to be identical, so far as the point here made is concerned, with the act of 1870. So it has been treated by the advocates.

At the request of the advocate for the claimant, I have again examined the question in the light of the brief submitted on this occasion, but I find no reason for changing the opinion expressed in the case of The Ann Ryan [supra]. It may, however, be worth while to notice briefly some of the points now urged in opposition to the statute. The present statute of New York called in question is the act of 1875, the material portion of which is as follows:

"Section 1. It shall be lawful to charge and receive within the cities of New York, Brooklyn, and Long Island City, wharfage and dockage at the following rates, viz.: From every vessel that uses or makes fast to any pier, wharf, or bulkhead, within said cities, or makes fast to any vessel lying at such pier, wharf, or bulkhead, or to any other vessel lying outside of such vessel, for every day or part of a day, as follows: From every vessel of 200 tons burden and under, two cents per ton, and from every vessel over 200 tons burden two cents per ton for each of the first 200 tons, and one-half of one cent per ton for every additional ton, except that all canal boats navigating the canals of this state, vessels known as North river barges, market boats, and sloops employed upon the rivers of this state, and schooners exclusively employed upon the rivers of this state, shall pay the same rates as such boats or barges were liable to pay under the provisions of that act passed April 10, 1860; * * * and the class of sailing vessels now known as lighters shall be at one-half of the first above rates, * * * and from every vessel or floating structure other than those above named, or used for transportation of freight or passengers, double the first above rates; except that floating grain-elevators shall pay one-half the first above rates."

In view of the decisions there is no room to contend, and it has not here been contended, that a state statute fixing rates of compensation to be paid to a wharfinger, for the use of his wharf by a vessel moored thereat, is a tax upon tonnage, or an impediment to navigation. But if I have rightly comprehended the argument it is contended that the statute under consideration is not in legal effect a wharfage act, because, as it is said, under the name of wharfage it allows a greater sum to be charged than is reasonable compensation for the use of the wharf; which extra charge is in substance simply a burden imposed by the state upon navigation and commerce among the states; whence, it is insisted, the statute should be held to be repugnant to the constitution of the United States as being an illegal regulation of commerce.

In order to sustain this argument it is necessary to decide that the sum allowed by the state statute to be charged vessels of the class to which the claimant's vessel belongs, is more than a reasonable compensation for the service rendered, or benefit received. But on what ground shall a court declare the charge here sought to be enforced to be more than is reasonable? If

want of apparent reason—I do not say that reasons do not exist—for the distinction in rate made by the statute between canal boats engaged in navigating the canals of this state, North river barges, market boats, sloops employed upon the rivers of this state, schooners exclusively employed upon the rivers of this state, lighters, and other vessels, permits the conclusion that some of the rates are unreasonable, how can it be declared to be the higher rate rather than the lower rate that is the unreasonable rate? Moreover, if the state of New York has the right to fix rates of wharfage, I am unable to see how any rate declared by this statute to be legal can by the courts be declared unreasonable, and for that cause illegal. The power of the state over the subject matter of wharfage rates, includes the power to discriminate as to the rate between vessels belonging to different classes, and between vessels engaged in different occupations; and where distinctions of that character are found in the statutes of the state, it must be presumed by the courts that those distinctions are founded upon some good reason. One reason may be found in the fact that vessels engaged in certain kinds of navigation are necessarily compelled to spend a greater portion of their time at the wharf than is ever spent by vessels in other employments, and so may justly be allowed to obtain their wharfage at a less rate per day. I find, therefore, no ground on which to rest a distinction between this statute and those wharfage acts of other states that have been upheld by the courts. Packet Co. v. Keokuk, 95 U. S. 80, and cases there cited.

More plainly still is this statute free from objection as creating a tax upon tonnage. It has none of the features of a tax law. The rates fixed by it are not to be paid directly or indirectly to the state, but to the owners of wharves, and they are to be paid for wharfage accommodation actually furnished.

Another ground of objection to this statute is, that it is repugnant to article 4 of the constitution, because it creates a discrimination between citizens of different states. But this objection rests upon the presumption that canal boats navigating the canals of New York, and schooners employed upon the river, are owned by citizens of New York, while boats otherwise engaged are owned by citizens of other states. Manifestly, no such presumption can be indulged in, and the objection falls with the presumption on which it rests.

Again, it is said that wharfage is in fact paid by the shippers of the cargo as part of the freight charged, and the statute therefore, in effect, creates an impost upon goods brought from a foreign state into New York, or a tax upon non-citizens for the use of a domestic port. Here, too, the objection rests upon an unwarranted presumption. What

foundation, in fact, is to be found for the assertion that shippers of cargoes on board canal boats, not engaged in navigating the canals of New York, that moor at the wharves of New York and Brooklyn are not citizens of the state of New York? The brief speaks earnestly of increased freight charges made because the merchandise is brought from another state; of a discrimination in favor of citizens as against non-citizen-carriers; of the exclusion of interstate craft from the wharves of New York by vexatious tolls; of the act as applicable to all vessels indiscriminately, except domestic vessels. These expressions seem to me to have no application to the statute under consideration. The statute in no way favors the tonnage owned by citizens of New York, nor does it directly or indirectly establish an inequality in commercial intercourse. While its effect, taken in connection with the other statutes of the state, is to allow wharfingers to charge different rates of wharfage according to circumstances prescribed in the act, still, neither in words nor in operation does it create a distinction between the citizens of different states, or between commerce among the states and purely internal commerce. Those citizens of New York whose canal boats navigate the harbor of New York and the East and the Hudson rivers, pay the same rate of wharfage as do those citizens of other states whose boats are engaged in the same business; and those citizens of other states whose boats are engaged in navigating the canals of this state, pay the same rate of wharfage as do the citizens of New York who are engaged in that business. The most that can be said is that the statute has an indirect effect to favor the navigation of the canals and rivers of this state by reducing the amount of port charges incident to voyages upon those waters. But the act is nevertheless, in substance and effect, a wharfage act; and I am unable to see how the indirect effect above indicated renders it repugnant to any provision in the constitution of the United States.

For these reasons I am of the opinion that the present wharfage act of New York, above set forth, is a valid enactment, and therefore to be resorted to by this court in order to determine the rates of wharfage which the libellant is entitled to charge for the wharfage service shown to have been rendered. There must, therefore, be a decree for the libellant for the sum admitted to be the amount of wharfage due for the period during which the libellant's wharf was used, if calculated according to the rates fixed by the laws of the state, viz. sixty dollars, and he is also entitled to costs.