## The Hercules.

*(District Court, E. D. Michigan.* June 17, 1886.)

WHARFAGE—LAPPING OVER OF STEAMER LYING AT ADJOINING WHARF.
Under a state statute defining "wharfage" to be the "lying immediately in front of or attached to any wharf, etc., so as to prevent the use of any portion of such wharf, * * * with or without the discharge of freight or passengers across such wharf," *held,* that the lapping over of a steam-boat lying at an adjoining wharf was an occupation within the meaning of the statute, though no actual use were made of such wharf.

In Admiralty.

The libel charged the tug with making use of libelant's wharf, in the city of Detroit, during the months of September and October, 1884. The answer denied the use of the wharf as charged in the libel, and averred that respondent had the use of the wharf at the foot of Bates street, next above the wharf of the libelant; that occasionally, when vessels were unloading or lying at the wharf next above Bates street, they would tail down or lap somewhat the wharf used by respondent; that respondent, for the convenience of his vessels, when there were no vessels lying at libelant's wharf, would allow his tug to drift down and lap the wharf of libelant; and that occasionally, when the wind was strong down stream, the current may have carried his tug down until she lapped the wharf of libelant; and that this was the only way he had used libelant's wharf. He further averred that said drifting down and lapping over never resulted in any inconvenience, expense, or loss to libelant; that, having steam up all the time, respondent had always been ready to move his tug,

and always has moved her, and left unobstructed the entire portion of libelant's wharf, upon the approach of any vessel to land thereat; and submitted that such use of the wharf did not constitute wharfage for which a lien was given, either under the maritime law or the law of the state. The evidence showed that the owner of the tug was served with notice, both oral and written, that the tug should cease using the libelant's wharf, upon penalty of paying wharfage.

*James H. Brewster*, for libelant.

*J. W. Finney*, for claimant.

BROWN, J. As to whether the tug was actually moored to and made use of libelant's wharf for the accommodation of her gang-plank, the evidence is very conflicting. The testimony of the witness Culver, who was employed by libelant to make a note of the hours during which the Hercules lay at his wharf, leaves it somewhat uncertain how many times she lay there with her whole length. Indeed, his testimony is not absolutely inconsistent with that of the master of the tug, and the other witnesses, that she actually made use of the wharf but once. At least there is no such preponderance of testimony in favor of the libelant, or such certainty as to the number of times she made use of the wharf, as would justify a decree against the tug upon that basis.

The question, then, is clearly presented whether, under the statute of this state, there is a lien for such occupation of a wharf as consists in lapping over from an adjoining wharf. In this case the wharf used by the tug at the foot of Bates street was but 50 feet in length, while the tug was about 80 feet long, so that it was impossible for her to lie there without projecting considerably over the line of libelant's wharf. Such use would clearly not give rise to a claim for wharfage by the general maritime law, which requires that the vessel shall make use of the wharf for the purpose of loading or unloading goods or passengers in order to be subjected to a lien. *Ex parte Easton*, 95 U. S. 68; *The Gem*, 1 Brown, Adm. 37. But by the statute of this state every water-craft of above five tons burden, used or intended to be used in navigating the waters of this state, is subject to a lien thereon "for all sums due for wharfage, anchorage, or dock-hire, including the use of dry-docks. The lying immediately in front of, or attached to, any wharf, dock, or pier within this state, so as to prevent the use of any portion of such wharf, dock, or pier by other water-craft, with or without the discharge of freight or passengers across such wharf, dock, or pier, after a notice to leave, shall be evidence of an agreement to pay for such use, whatever the same may be worth." More sweeping language could hardly have been employed to indicate the intention of the legislature to charge the vessel with a claim for wharfage whenever she lies in front of any portion of a wharf. In the case of *The Tecumseh*, decided in 1881, I held the statute broad enough to include the case of lapping over,

and I have since had no reason to change my views. If the argument of the respondent be sound, then a vessel may continue for years to enjoy the benefit of a wharf to the extent of half or two-thirds her length without compensation; and this is shown to be the actual fact in this case.

I have no criticism to make of the case of *Original Hartlepool Collieries Co.* v. *Gibb*, 5 Ch. Div. 713. In this case it was held that a riparian owner had a right to moor his vessel along-side of his wharf for the purpose of loading or unloading, at reasonable times, and for a reasonable time; and that the court would restrain, by injunction, the owner of adjoining premises from interfering with the access of such vessel, even though the vessel might overlap his own premises. In this case the defendant, owning the wharf adjacent to that occupied by the plaintiff, placed rafts of timber in front of his wharf in such a way that plaintiff's vessel could not obtain access to his own wharf, as his vessel was so much longer than the wharf that he was obliged to lap over upon defendant's wharf. It was held he had a right to do so. I have no doubt of the correctness of this ruling, and would enjoin a party from interfering with the use of an adjoining dock in this way, subject, under the state statute, to the payment of a reasonable compensation for the use of such dock. There seems to have been a custom on the Thames for wharf-owners to use each other's wharves for overlapping their vessels without compensation, but in this state the language of the statute is so explicit I see no way of avoiding the inference that a person desiring to use a dock in this way is bound to pay a reasonable compensation after notice to quit. The projection in some cases may be so trifling, or continue for so short a time, as to be unworthy of notice; but where a vessel habitually, and in defiance of notice, makes use of a wharf in this way, I think the owner of the wharf, under the statute, is entitled to compensation.

While the vessel would not actually be in the way of another desiring to use it, and be of no injury to the wharf, its presence is very likely to deter other vessels from going there. The numerous cases arising in the state of New York, of which *Taylor* v. *Atlantic Mut. Ins. Co.*, 37 N. Y. 275, is an example, are equally inapplicable, since the New York statute allows a claim for wharfage only in cases where the vessel uses or is made fast to a wharf.

There was no technical notice to quit in this case, but there was a general notice that, if respondent's tugs continued to make use of the wharf, libelant would exact compensation. The object of the statute being only to apprise parties that a claim will be made for wharfage, I do not think the notice need necessarily be in the exact form of a notice to leave. There is, however, no testimony in this case which can serve as a basis for awarding damages, and there must either be a decree for nominal damages, or a reference to a commissioner to assess the same.