## THE DAVIDSON.

(District Court, D. Rhode Island. May 13, 1903.)

### No. 1,091.

**1. WHARVES—RIGHT TO WHARFAGE—OVERLAPPING VESSEL.**

The owner of a wharf extending to the harbor line in navigable waters has not an exclusive right to the occupation at all times of the berth in front of his wharf, but his right is subject to that of the public to make reasonable use of such waters, and no claim for wharfage arises in his favor against a vessel because while lying in the public waters discharging at an adjoining wharf she partially overlaps his own, at a time when he had no actual use for the space so occupied.

In Admiralty. Suit in rem for wharfage.

James Tillinghast and Wm. R. Tillinghast, for libelant.
Van Slyck & Mumford and Charles C. Mumford, for claimant.

BROWN, District Judge. This libel is for wharfage. I am not satisfied that the Davidson made fast to, or made any use of, the libelant's wharf. The single question therefore is, can the libelant collect wharfage because, while the barge was unloading a cargo of coal at an adjoining wharf, the stern of the barge overlapped his wharf? The wharf is built out to the harbor line. Private ownership ceases at this line, and the waters of the Providence river are a public highway. Chase v. American Steamboat Co., 10 R. I. 79; Clark v. Peckham, 10 R. I. 35, 14 Am. Rep. 654. Counsel for the Davidson contend that the barge merely occupied a portion of a public highway upon which the wharf abuts, and argue that the case is analogous to the use of a public highway in a city, on which the public have a right to pass and repass, and on any portion of which any person has a right to stop temporarily, though it be upon a portion upon which private premises abut, and that such temporary stopping cannot be construed to give to the abutting owner any claim for compensation for the use and occupation of the highway.

In The Hercules (D. C.) 28 Fed. 475, it was said:

"Such use would clearly not give rise to a claim for wharfage by the general maritime law, which requires that the vessel shall make use of the wharf for the purpose of loading or unloading goods or passengers in order to be subject to that lien. Ex parte Easton, 95 U. S. 68 [24 L. Ed. 373]; The Gem, 1 Brown's Adm. 37 [Fed. Cas. No. 5,303]."

Counsel for the libelant point out the fact that the question decided by the court in this case was that of liability for wharfage under a Michigan statute, and questions the dictum as to the general maritime law, saying that neither of the authorities cited involved any question of overlapping. In Ex parte Easton, 95 U. S. 76, 24 L. Ed. 373, it was said:

"From an early period wharf owners have been allowed to exact from ships and vessels using a berth at their wharves a reasonable compensation for the use of the same, and a ship or vessel enjoying such a privilege has always been accustomed to pay to the proprietor of the wharf a reasonable compensation for the use of the berth."

The utmost that can be said in support of the libel is that a portion of the barge's berth was immediately in front of the libelant's wharf,.

and that she would have been an obstruction to the use of the libelant's wharf had there been occasion for its use. The libelant's testimony shows, however, that at the time when the Davidson lay across his wharf he had no applications for its use, and did not himself require its immediate use. The language of the court in Ex parte Easton would seem hardly definite enough to support the proposition that there must be an actual loading or unloading of goods or passengers in order to give rise to a lien for wharfage. The Gem, 1 Brown's Adm. 37 [Fed. Cas. No. 5,303], however, says of wharfage:

> "Strictly speaking, it is money due, or money actually paid, for the privilege of landing goods upon or loading a vessel while moored from a wharf. The occupation, by anchorage or otherwise, of a navigable river open to all, in the vicinage of a wharf, implies no contract of wharfage, because it is no use of the wharf for either the landing or the reception of passengers or merchandise."

As the occupation of a berth at a wharf may be useful to a vessel for other purposes than loading or unloading goods or passengers, it is quite probable that the right to a lien does not depend solely upon the question whether goods or passengers were loaded or unloaded. The wharf owner, as an abutting proprietor, like the owner of land abutting on a land highway, has an easement of ingress and egress. He is entitled to damages for actual and unreasonable obstruction of his special rights as an abutter. On the other hand, the wharf owner has not, I think, an exclusive right to the occupation at all times of the berth in front of his wharf, and, if the public use of the river so required, could probably be compelled to move vessels from his own wharf after a reasonable time for the discharge of the cargoes, in order to leave the space clear for the passage and ordinary maneuvering of other vessels. Whether a vessel which actually occupied a berth in front of a wharf at a time when the same berth was needed for other vessels, in the course of the wharf owner's usual business, would be subject to a lien upon an implied contract for wharfage, is a question not presented or involved in the present case. The question is whether the occupation of public waters at a time when the wharf owner has no actual use for the berth in front of his wharf gives him any right to wharfage. I fail to see upon what exact ground the wharf owner's claim can be supported. The vessel has not used his property, has not prevented the use of his property, has not appropriated to itself what, but for its appropriation, would have been valuable to the wharf owner.

The libelant contends that every vessel, for the proper conduct of its business, requires a berth to lie in at least equal to her length, and that there is no reason why she should not pay for what is thus of supreme importance to her. There is every reason, however, why she should not be called upon to pay a private individual for the occupation of a public highway which is not his property, when that occupation takes from him nothing, and does not interfere with his actual use of his wharf.

The libelant contends that the object of a wharf for use in navigation is to give the owner a right of access to the navigable waters at all times, and that this right of access should not be impaired even to

the extent of permitting another to use the water in front of the wharf at the risk of interfering to prevent even a possible use of such wharf by the owner or his lessees. In support of the proposition that the risk of interference with a possible use is a basis for a money claim, the libelant cites The William H. Brinsfield (D. C.) 39 Fed. 215. In this case the dock was one constructed by private individual enterprise. The riparian owner of partially submerged land, by digging out a canal and building up its sides, had constructed a basin. The court says:

"It is the case of a riparian owner who has cut a canal into his own land so as to allow vessels to go to his own property fronting on it, and then has disposed of portions of the land to different persons." Also: "But it does not seem to me the analogy between the use of the waterway of this private basin and the use of a street is very close. The very purpose of the basin is that vessels may lie in it for the private owners of the wharves abutting on it," etc. Also: "In the absence of law or lawful custom, as to owners upon a water which is not so much a public navigable highway as it is a private basin, it seems to me the only legal right is that of unobstructed access each to his own wharf."

The court also said:

"It is not true of this dock that it is a public highway in the same broad sense that it is true of the river Thames at London. The owner of the surrounding land constructed the dock, and, if all the present owners agreed, I have no doubt they could lawfully fill it up and make it fast land."

The fact that the vessel was occupying a berth in an artificial basin constructed by the landowners at their own expense was a controlling consideration in this case, and deprives it of value as an authority in the present case of a wharf owner who abuts upon the natural channel of a much-used river. The court also said:

"It is urged that by the use and occupation, such as it was, the libelant suffered no loss, as he had not at the time any vessel he desired to bring to his own wharf, and the schooner would have been removed to make way for any vessel which was intended for libelant's wharf. The proof, however, with regard to frequent previous occurrences, shows that the right to have an obstruction removed upon request was not the equivalent of having libelant's premises unobstructed. There is testimony that the presence of an overlapping vessel has a tendency to deter others from coming to a wharf, and that the annoyance of being constantly obliged to make requests, and await the removal of overlapping vessels, has been found to drive away tenants and others who would make use of libelant's wharf to his profit."

In the present case there is no testimony of this character. I fail to see, however, any ground for holding that this wharf owner, or any other wharf owner, on the public waters of the Providence river, has a theoretical right of unobstructed access to his own wharf at each and every moment of the day, any more than an abutter on a land highway has such a theoretical right.

The special rights of an abutter are subject to the ordinary and reasonable use of the highway by the public. This use in crowded cities may be such as frequently to delay ingress and egress to and from private premises. The public has not only rights of passage, but of temporary stopping with vehicles for the delivery of goods and other necessary purposes. The reasonableness of the use will depend upon various considerations; but the public use, if reasonable and necessary, is no violation of the abutter's special rights, even though access to his

premises is impeded. Though the uses of a waterway differ from the uses of a landway, the same general principles are applicable to an abutter on a waterway as are applicable to an abutter on a land highway. Appendant to wharf property abutting on the harbor line of the Providence river at the place in question are rights of ingress, of occupation of a berth at the wharf, and of egress, for the owner's ordinary and reasonable uses of the wharf property. These rights are, however, subject to the public right to the use of the river.

There is neither authority nor reason to support the libelant's contention that appendant to wharf property is a theoretical right of uninterrupted and immediate access at all times. There is no such right, and therefore the libelant's argument, that the risk of interference with such a right is a sufficient basis for the allowance of wharfage, falls.

Counsel have not brought to my attention any statutes of the state bearing directly upon this question, nor has there been presented any sufficient evidence of a custom as to overlapping of vessels. In the city charter of the City of Providence (section 9, cl. 1) the city council was given power to make "laws, ordinances, and regulations for the government of said city relative to * * * landing places, wharves, the anchoring and mooring of vessels, and to injuries and encroachments upon the river and harbor"; also power to elect a harbor master to perform such duties as may be prescribed by the city council. In the ordinances of the city of Providence (Revision 1899, p. 44) the duties of the harbor master are prescribed. He has power to prescribe regulations and give directions regarding the anchorage station, management, and control of all vessels within the harbor of Providence. Section 7 is as follows:

"The harbor master may remove, from time to time, any vessel not employed in receiving or discharging cargo, so as to make room for others requiring to be accommodated, and shall be the sole judge of the fact of any vessel's being fairly and legitimately engaged in the receiving or discharging of cargo. He may also determine the extent, time, and manner of accommodation respecting the stations of vessels, which should be extended by the owners or masters thereof to each other, and to require such accommodation to be extended."

There is also provided by section 11 a fine for the refusal of masters or persons in charge of vessels to obey the directions of the harbor master in matters within his authority. An appeal to the harbor master seems to have been for many years the practical way of disposing of ordinary disputes, and there are appropriate remedies in the state courts for the prevention of unnecessary and unreasonable obstructions to the use of wharf property, and for the recovery of damages for actual violations of right.

The impairment of the value of wharf property because of overlapping, and because of the inconvenience of making requests for the removal of overlapping vessels and of the delay in awaiting their removal, is a consideration which may be entirely fanciful or substantial, according to circumstances. Applied to some of our wharves, it would by highly imaginative; to others, it would be more or less substantial. It is, however, altogether too uncertain a basis for the establishment of an arbitrary rule that the occupation of a berth in public wa-

ters, immediately in front of a private wharf, gives an invariable right to wharfage.

When the commerce of a port is such that every wharf front is in practically constant demand for use, it may be wise for the legislature to settle disputes, and to provide that the occupation of a berth in front of a private wharf, so as to obstruct access thereto, shall give the right to wharfage, though the vessel is not loading or unloading at the wharf or made fast thereto. Such legislation has been had in other states, and is, perhaps, an indication of the nonexistence of the right to wharfage, under such circumstances, without express legislation. In less-frequented ports there would seem to be no sufficient reason for such a rule. If it is the fact that the overlapping of a vessel does not usually injure the wharf owner, or deprive him of any actual use of his wharf, then there is no reason for a charge for wharfage based upon a novel and impractical theory of a right to unobstructed access at all hours of the day.

Evidence has been offered that in a few instances adjoining wharf owners have agreed upon moderate sums as compensation for a license for continuous overlapping. On the other hand, there is evidence that there have been many instances of overlapping for which no compensation has been demanded. There is no evidence sufficient to establish a custom of the port. The broad proposition that a claim for wharfage arises whenever any vessel so overlaps a wharf that her berth, though in public waters, is wholly or partly in front of the wharf, so that she would be a total or partial obstruction to its use if its use were required, cannot be accepted. To adopt such an arbitrary rule would be to enlarge the law, to encourage unreasonable demands for petty sums, and to create unnecessary annoyances to masters of vessels and unnecessary burdens upon commerce.

The evidence as to the value of a berth at the libelant's wharf need not be considered in detail. The demand for wharfage at the rate of $25 per day was clearly excessive and unreasonable, and was apparently intended rather as an assertion of right than as an estimate of a fair price for a berth at libelant's wharf.

The libelant has failed to make out the existence of a right to collect wharfage from the Davidson by reason of her occupation of a berth partly in front of his wharf, but in the public waters.

The libel will be dismissed.