## GALVESTON WHARF CO. v. PHILLIPS.
### No. 1465.

District Court, S. D. Texas, Galveston Division.

July 28, 1933.

W. D. Baggett, of Galveston, Tex., R. R. Harkrider, of Abilene, Tex., and Terry, Cavin & Mills, of Galveston, Tex., for libelant.

Royston & Rayzor, of Galveston, Tex., for respondent.

KENNERLY, District Judge.

This is a libel in personam by libelant against respondent, to recover $294.35 dockage charges, liability for which respondent denies. Libelant is a corporation, owning a wharf or wharves, organized to do, and doing, a wharfage business at the port of Galveston, in this division and district, and respondents are steamship agents. Ex parte Easton, 95 U. S. 77, 24 L. Ed. 373.

The following are the facts:

September 16, 1930, respondent contracted with libelant for the dockage at libelant's wharf at Galveston, of the steamship Planter, having a gross registered tonnage of 5,887 tons, for the purpose of unloading cargo from a foreign port, at such wharf. Such contract was made under libelant's tariff circular No. 1 and rules and regulations, issued August 20, 1929, effective September 1, 1929, and in effect at the date of such contract.

Such tariff circular No. 1 consists of 14 printed pages. The first three pages contain a list of libelant's officers, an index, and other similar information, unimportant here. Pages 4 and 5 contain section 1, defining certain words and terms used in such tariff. Pages 6 to 10, inclusive, contain section 2, divided into thirteen items relating to "Charges which will be incurred by vessels engaged in foreign trade." Items 1, 2, 3, 4, 5, 6, 7, and 8 of section 2 relate to, and fix, charges for dockage at libelant's wharf. Items 9 and 10 relate to charges for vessels loading grain, and item 11 relates to charges for bulk cargoes. Items 12 and 13 relate to, and fix, charges for shed hire. Pages 11 to 14, inclusive, contain section 3, containing certain regulations and information.

The steamship Planter arrived at libelant's wharf at 8:30 a. m. September 16, 1930, and remained there, discharging cargo, until 7:10 a. m. September 18, 1930, and then, having completed discharge of cargo, proceeded to sea, without loading outward cargo. Respondent paid libelant all charges (i. e., inward wharfage on cargo, amounting to $296.-89, and shed hire on inward cargo, amounting to $50) for the use of libelant's facilities by such steamship, except dockage under items 1 and 4 of section 2, reading as follows:

"Item No. 1:—All vessels handling Import or Export cargo, except as provided in items No. 3, 4, 8, and 11, shall pay for the use of wharves or mooring facilities a dockage as follows:

| | |
|---|---|
| 3 cents per gross ton for | 1st day. |
| 2 cents per gross ton for | 2nd day. |
| 1 cent per gross ton for | 3rd day. |
| No Charge per gross ton for | 4th day. |
| No Charge per gross ton for | 5th day. |
| No Charge per gross ton for | 6th day. |
| No Charge per gross ton for | 7th day. |
| No Charge per gross ton for | 8th day. |
| No Charge per gross ton for | 9th day. |
| No Charge per gross ton for | 10th day. |
| No Charge per gross ton for | 11th day. |
| No Charge per gross ton for | 12th day. |
| No Charge per gross ton for | 13th day. |
| No Charge per gross ton for | 14th day. |
| No Charge per gross ton for | 15th day. |
| 1 cent per gross ton for | 16th day. |
| 1 cent per gross ton for | 17th day. |
| 1 cent per gross ton for | 18th day. |
| 1 cent per gross ton for | 19th day. |
| 1 cent per gross ton for | 20th day. |

"Item No. 4:—Vessels discharging Inward cargo and not loading Outward cargo will be charged one cent per gross registered ton per day, or fraction thereof, commencing 24 hours after completing discharge, so long as said vessel is berthed at any wharf or mooring, or made fast to any vessel so berthed."

Libelant claims that respondent, under such contract, owes it 3 cents per gross ton (5,887 gross tons) for the first day, and 2 cents per gross ton for the second day, aggregating $294.35, the amount sued for. Respondents deny that they owe, and refuse to pay, libelant any sum.

Such items 1 and 4 of section 2 were amended by libelant, effective August 1, 1930, but libelant admits that respondent had no notice of such amendments at the date of the contract sued upon, and libelant stands upon the contract under items 1 and 4 as they were prior to such amendments, and as quoted above. The evidence shows that respondent first had knowledge or notice of such amendments on November 8, 1930.

It is shown that in one instance, in July, 1929, before tariff circular No. 1 became effective (September 1, 1929), respondent paid libelant for three days' dockage on the S. S. Arthur, under what apparently was a similar contract for such steamship. Also it is shown that in another instance in July, 1930, respondent paid libelant for two days' dockage on the S. S. Historian under such tariff, under what was apparently a similar contract for such steamship.

1. Item No. 1 of section 2 prescribes the dockage charge for vessels in foreign trade at 3 cents per gross ton for the first day, 2 cents for the second day, 1 cent for the third day, with no charge for a period of twelve days, and then again a charge of 1 cent per day up to and including the 20th day;[1] the language of Item No. 1 being (italics mine): "All vessels handling Import or Export cargo, *except as provided in items No. 3, 4, 8, and 11,* shall pay for the use of wharves or mooring facilities a dockage as follows:"

Item No. 4 is as follows: "Item No. 4:—Vessels discharging Inward cargo and not loading Outward cargo will be charged one cent per gross registered ton per day, or fraction thereof, commencing 24 hours after completing discharge, so long as said vessel is berthed at any wharf or mooring, or made fast to any vessel so berthed."

Under this wording, it is clear that it must be held that, since the steamship Planter took no *outward cargo,* it was not required to pay 3 cents per gross ton for the first day, 2 cents for the second day, and 1 cent for the third day, as prescribed by item 1, but only 1 cent per gross ton per day, or fraction thereof, to commence 24 hours after completing discharge of cargo, as prescribed by item 4. And, since such steamship sailed immediately upon completing discharge of cargo, respondent is not liable to libelant in any sum.

2. I think the evidence offered as to the construction given items 1 and 4 by libelant and respondent in other contracts, involving this and other vessels, is not sufficient to overturn the plain language of such items in the contract here.

Judgment for respondent.

---

[1] Provision is made in item 2, section 2, for vessels remaining after twenty days.