**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1236

SPM MANAGEMENT LLC, trading as Salt Ponds Marina Resort; NORTH 37 MANAGEMENT LLC,

Plaintiffs - Appellees,

v.

MOTOR YACHT SEA AYRE V, OFFICIAL NO. 923838, a/k/a SEA AYRE IV, her engines, tackle, equipment, etc., in rem,

Defendant - Appellant,

and

DOLORES K. AYRES; ELIZABETH AYRES KERR,

Claimants - Appellants,

LECLAIR RYAN, A Professional Corporation,

Movant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, Senior District Judge. (4:16-cv-00168-RGD-RJK)

Submitted: November 30, 2018                Decided: December 20, 2018

Before DUNCAN and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

---

Walter D. Kelley, Jr., HAUSFELD, LLP, Washington, D.C.; James S. McNider, III, JAMES S. MCNIDER, III, PLC, Hampton, Virginia, for Appellants.  Lisa M. Ernest, FIDELITY NATIONAL LAW GROUP, Vienna, Virginia; Mark T. Coberly, W. Thomas Chappell, VANDEVENTER BLACK LLP, Norfolk, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dolores K. Ayres and Elizabeth Ayres Kerr ("Claimants") appeal the district court's order awarding a maritime lien against their yacht, the *Sea Ayre V*. The district court held that Plaintiffs SPM Management LLC and North 37 Management LLC had established their right to charge the *Sea Ayre V* for dockage, and the court imposed a maritime lien on the yacht in the amount of $10,124.80. We have reviewed the record and find no reversible error.[1] Accordingly, we affirm the order and judgment of the district court.

"Compensation for wharfage may be claimed upon an express or an implied contract, . . . and when the wharf is used without any . . . agreement, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred." *Ex parte Easton*, 95 U.S. 68, 73 (1877); *see Humphreys Rys., Inc. v. F/V Nils S*, 603 F. Supp. 95, 97-99 (E.D. Va. 1984). An implied wharfage contract "gives to the proprietor of the wharf a maritime lien on the ship or vessel for his security," pursuant to 46 U.S.C. § 31342 (2012). *Easton*, 95 U.S. at 75-76. Plaintiffs must have the right to rent the berth occupied by the seized vessel. *See Port Laudania Terminal, Inc. v. Barge Sun Coaster*, 453 F.2d 1308, 1309 (5th Cir. 1972).

---

[1] In the appeal of a bench trial, we review findings of fact for clear error and conclusions of law de novo. *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 357 (4th Cir. 2014). The Supreme Court has recognized that "[p]iers and docks [are] consistently deemed extensions of land" and that "[t]he gangplank has served as a rough dividing line between the state and maritime regimes." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 206-07 (1971). Thus, the district court correctly applied Virginia state law to determine ownership of the Additional Land 15 parcel.

3

First, Claimants contest Plaintiffs' implied dockage contract by arguing that Plaintiffs failed to adequately establish that the T-head floating dock was in fact located within the Additional Land 15 parcel. The district court found that "the Western half of the T-head is clearly outside Units E-1 through E-8 and inside Additional Land 15. Any boat docked at the T-head would thus be located within Additional Land 15 and tie up to that portion of the floating pier located within Additional Land 15." (J.A. 979; *see* J.A. 567, 598).[2] Contrary to Claimants' assertion, the district court correctly relied on the recorded plat of E Dock without contemporary survey evidence of the T-head's location. Claimants point to language indicating that the plat is "for convenience of reference only," (J.A. 499), but that language merely provides that the plat is subject to change, not that the plat is imprecise. Furthermore, Claimants' own authority recognizes that a recorded plat is sufficient to "locate[ ] the land in dispute within the clear description of [the] deed." *Smith v. Bailey*, 127 S.E. 89, 92 (Va. 1925).

Claimants also argue that Plaintiffs failed "to locate E Dock vis-à-vis [Additional Land 15] during the relevant time period" because "E Dock is a floating structure, and the courts have long recognized that waterfronts are dynamic environments where things can and do shift over time." (Appellants' Br. at 12 n.4). But as the district court held, "[t]he plat plainly uses dotted lines to reflect the location of the floating pier." (J.A. 978-79). Moreover, the plat clearly shows the measurements and latitude and longitude boundary lines of the respective properties. Despite the inherent uncertainty of the waterfront

---

[2] "J.A." refers to the joint appendix filed by the parties.

environment, the record plainly shows that the seaward side of the T-head floating dock was located within the Additional Land 15 parcel. Therefore, it was not clear error for the district court to find that the *Sea Ayre V* was docked in the Additional Land 15 parcel.

Second, Claimants contend that even if the *Sea Ayre V* was docked in the Additional Land 15 parcel, Plaintiffs have not established their ownership of that parcel, nullifying the implied dockage contract. Claimants raise two distinct arguments in support of this claim: that Claimants in fact own the parcel as a fixture or an accession to E Dock, and that no party can assert an ownership claim to any portion of E Dock due to the Commonwealth of Virginia's sovereign ownership of subaqueous lands. Claimants did not raise the former argument at trial, so it was not preserved for appeal. *See Helton v. AT&T, Inc.*, 709 F.3d 343, 360 (4th Cir. 2013); *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir. 1976).

With regard to the latter argument, the Commonwealth owns the subaqueous land within its jurisdiction, Va. Code Ann. § 28.2-1200 (2016), and is entitled to control stationary objects above the subaqueous bottom, *Virginia Marine Resources Commission v. Chincoteague Inn*, 757 S.E.2d 1, 9-10 (Va. 2014). But the Commonwealth also has liberal authority to issue permits for projects over its subaqueous lands. Va. Code Ann. §§ 28.2-1203, 1204, 1205 (2016). Thus, Plaintiffs' ownership claim to the Additional Land 15 parcel does not implicate the subaqueous bed of the waterway but rather the water area above it, as designated in the recorded plat and reflected in the chain of title presented at trial. As the district court correctly held, the Commonwealth's ownership of subaqueous land does not prevent Plaintiffs from asserting an implied dockage contract.

5

To the contrary, the record supports the district court's conclusion that "Plaintiffs presented perfect paper title that fixed the boundaries of all parties' real property to the land and improvements." (J.A. 979). Plaintiffs have presented undisputed lay, expert, and written testimony showing that they are the current record title owner of the Additional Land 15 parcel. As the district court noted, Claimants could have disputed this evidence or filed a quiet title action, but they have not done so. Thus, Plaintiffs are entitled to an implied dockage contract and maritime lien to recover the unpaid rent. *See Easton*, 95 U.S. at 73; *see also* 46 U.S.C. § 31342.

Accordingly, we affirm the order and judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*