### THE TRINIDAD.

#### (District Court, E. D. New York. May 13, 1918.)

1. WHARVES ☞17—WHARFAGE—DAMAGES—MARKET VALUE.
    Like demurrage, wharfage can be fixed at a market rate, which represents the amount of damage, loss of profits, etc.

2. WHARVES ☞19—WHARFAGE—DAMAGES—EVIDENCE.
    If proof be given of a market rate of wharfage, no further proof on question of damages is necessary, and such charge is properly allowed.

3. SHIPPING ☞76—REPAIR OF VESSELS—DEDUCTIONS.
    Where libelant, which had repaired a vessel, consented to a deduction on the condition of prompt payment, and the owner failed to comply with the condition, being unable to dispose of the vessel, so as to obtain funds to pay for the repairs, it lost any legal right to claim the deduction or allowance.

4. WHARVES ☞18—WHARFAGE—LIEN.
    Where the owner of a vessel failed to pay for repairs at their completion, the vessel meanwhile remaining in the dock of libelant, which made the repairs, the vessel is liable for wharfage, and libelant is entitled to a lien thereon.

5. WHARVES ☞17—WHARFAGE—AMOUNT.
    On libel by a dock company, which repaired a vessel, held that, under the circumstances, it was entitled to wharfage at the rate of $45 a day during the period when the vessel was retained, because of the owner's failure to pay for the repairs.

In Admiralty. Libel by the Tietjen & Lang Dry Dock Company against the steamer Trinidad, her engines, etc., claimed by Alfred Webber Duckett. Decree for libelant.

Crowell & Rouse, of New York City (J. Dexter Crowell, of New York City, of counsel), for libelant.

Peale & McLaughlin, of New York City (Francis X. Carmody, of New York City, of counsel), for claimant.

CHATFIELD, District Judge. The libelant did work totaling $122,940.81, which included a large amount of work extra to that required by the original specifications. This work was completed and payment demanded on or about the 26th day of February, 1917. The steamer Trinidad, on which the work had been done, was then in the

---

Tietjen & Lang Dry Docks in Jersey City, and apparently question was immediately raised as to items totaling $1,096, which the owner of the steamer claimed had been included in the charge, although the work which they represented had been omitted by its direction. Prompt payment of the bill was demanded, and there is evidence that a charge of $100 wharfage per day was threatened if there was delay in payment. The president of the Tietjen & Lang Company, after some discussion, offered to allow the $1,096 above referred to as a deduction, if payment was made at once. The bill was not paid until the 29th day of March, the vessel at that time changing ownership. The delay in the purchase of the vessel seems to have corresponded to the delay in paying the bill, and at the time of payment two questions were left open, which came up for adjustment. One was the amount of wharfage claimed by Tietjen & Lang, and the other the old item of $1,096, which the owners of the steamship thought should still be allowed. The Tietjen & Lang people have never claimed interest upon the amount of their bill, nor any damages occasioned by their loss of the space occupied by the Trinidad, during this time. Instead of so doing, they have withdrawn the deduction, which was conditioned upon prompt payment, and have fixed the berth charge at a reduced amount of $75 per day, which according to the testimony of one witness was the minimum market rate at that time for a berth of this size.

[1] Like demurrage, wharfage can be fixed at a market rate which represents the amount of damages, loss of profits, etc. If proof be given of such a market rate, then no further proof would be necessary on the question of damage, and such a charge is properly allowed.

[2-5] Evidence was put in as to the charge fixed by the laws of New York (section 859, N. Y. Charter [Laws 1901, c. 466]) for public docks, which would not exceed, for a vessel of this size, $32 a day, and evidence has been given that a berth for purely storage purposes could be found at a considerably less price, even for $5 a day, where no protection was afforded to the vessel by the person furnishing the berth.

The libelant claims also $441.24 for other repairs made by direction of the new owner during the week subsequent to the payment of the original bills. Objection has been made to this charge on the ground that this work had been omitted, but had nevertheless been charged for in the original bill. The evidence shows clearly that no such double charge has been made, that the items were further extras ordered by the new owner, and the proof is satisfactory that the charge is reasonable in amount. But it is of some importance to note that the dry dock was willing to let the boat stay in the berth for the period of a week, while they were making repairs for which they received but $441.24, and this throws some light upon the propriety of their charging the full market rate of $75 a day during the preceding month. The president of the Tietjen & Lang Company has testified that he was not able to find a berth at the time, where he could place the boat; but his efforts to do so did not go so far as to put the matter in the hands of an agent, or to anchor the vessel in the harbor at the

risk of the owner, if he did not agree to the amount which he threatened to charge.

It is evident that the owner of the vessel was still negotiating for the sale of the boat, in order to pay the repairs out of the proceeds, and that so far as it was concerned it lost any legal right to claim the reduction or allowance of $1,096. The vessel was liable for wharfage, and for this a lien admittedly accrued. The Easton, 95 U. S. 68, 24 L. Ed. 373. The purchaser ordered the new work, amounting to $441.21, and the amount seems to be correct. It is apparent that the items of allowance and wharfage were particularly appropriate for negotiation or arbitration, but that it is difficult to find a legal basis for the wharfage charge, which should be allowed when the parties have failed to agree among themselves as to a fair amount. The notice given was that $100 a day would be charged; the amount insisted on is $75 a day, and this is the rate which might be proper at a wharf where the space was being let out for profit.

Consideration must also be given to the amount fixed by the charter of the city of New York for similar services, where the charge is a matter of statute rather than private agreement. If the delay had been short, the charge would undoubtedly have been disregarded. When a small amount of business was tendered by the new owner, the wharfage charge was immediately dropped.

The situation is analogous to that in the case of The Easton, 239 Fed. 859, 152 C. C. A. 643, decided by the Circuit Court of Appeals of this circuit, in which an item of demurrage was fixed by a commissioner at $40 a day; the testimony of the experts being, on the one hand, $45, and, on the other, various amounts under $40. In the District Court the $45 price was taken as correct, because supported by the evidence; but the Court of Appeals determined that the finding of the commissioner of a rate part way between the two extremes was "well supported by the evidence."

There is much reason in the present case for holding that such a solution would be fair. Probably the $75 a day rate would not have been insisted on, if it had been fixed by prior agreement. On the other hand, space at the rate of $32 could not be obtained, and such storage as could be had at $5 a day, or anchorage in the river, would not have been consented to by either party. As a fair mean between the $5 rate, the $32 rate, and the $75 rate, and having in mind the amount of the subsequent bill for the period during which no wharfage at all was charged, the libelant will be allowed wharfage at the rate of $45 a day for 31 days; that is, from February 27th to March 29th, inclusive.

Decree may be entered for $441.24 and $1,495, with costs and interest on $441.24.