## THE ANDREW J. SMITH.

### (District Court, E. D. New York. February 3, 1920.)

1. WHARVES ⊜⟶18—No LIEN FOR WHARFAGE UNLESS VESSEL IS IN MARITIME SERVICE.

Wharfage furnished to a vessel undergoing repairs is part of the charge giving rise to a lien under Act June 23, 1910, c. 373, § 1 (Comp. St. § 7783), but except as a part of a repair charge, there is no lien for wharfage, either statutory or under the general maritime law, unless the service is rendered to a vessel then engaged in navigation or as a preparation for continued navigation.

2. WHARVES ⊜⟶18—No LIEN FOR WHARFAGE OF ABANDONED VESSEL.

Where a tug sank at libelant's wharf, while undergoing repairs after an injury, and was abandoned by owner and insurer, libelant *held* not entitled to a lien for wharfage after that time, or for damages for obstruction by the wreck.

In Admiralty. Suit by the National Dry Dock & Repair Company against the steamer Andrew J. Smith. Decree for libelant.

Duncan & Mount, of New York City (Warner C. Pyne and Joseph K. Inness, both of New York City, of counsel), for libelant.

Bullowa & Bullowa, of New York City (Horace L. Cheyney, of New York City, of counsel), for claimant.

CHATFIELD, District Judge. This is an action for work, labor, and services furnished to the tug Smith by the National Dry Dock & Repair Company, between October 23, 1918, and March 14, 1919. The Smith had received an injury near Edgewood, N. J., which necessitated taking her to Staten Island for repairs. She reached the yards of the libelant, with whom an arrangement to make the repairs had been made by telephone, was taken to the Verdon dock, which is close by, for inspection, as the libelant's dry docks were filled at the time, and on the next day was brought to the libelant's dock and repairs made during the balance of October.and into November.

Discussion arose as to how much repairs should be put upon the vessel. It now appears that.the insurance company, which had insured the vessel, had not reached an agreement with the owner as to whether the vessel was worth making the repairs. Evidently the work of repairing was slowed up during December, and ultimately ceased entirely; but the vessel was not removed from the berth alongside the wharf where she was lying, and on January 11, 1918, sank. In sinking she closed or obstructed entrance to one of the libelant's dry docks. This obstruction continued until March 14, 1919, when the vessel was raised, taken away, and beached on the Staten Island shore, at a point where she has since been lying abandoned.

The libelant admittedly has a lien for the amount of his repairs furnished prior to her sinking on January 11, 1918, and the amount thereof must be determined on a reference in the ordinary manner.

[1] The principal issue which has been litigated at the trial is based upon a claim for wharfage, in which has been included a charge for

the use of a berth prior to the time of the vessel's sinking, and for the loss of the dry dock while obstructed by the vessel. The libelant claims that this charge for wharfage is sustainable either as an admiralty lien, under general maritime law, or under the present statute, passed June 23, 1910 (36 Stats. at Large, 604, c. 373 (Comp. St. § 7783), which gives a lien against any vessel, either foreign or domestic, for "repairs, supplies, or other necessaries, including the use of dry dock or marine railway."

Wharfage as such, like towing, as was held in the case of The J. Doherty (D. C.) 207 Fed. 997, is not included within the express language of this statute, when not furnished as an item of a repair bill. Wharfage furnished to a vessel undergoing repairs is part of the charge giving rise to the statutory lien. The Geisha (D. C.) 200 Fed. 865; The Trinidad (D. C.) 251 Fed. 174. If the wharfage charge is not a part of the repair bill, then no maritime lien arises unless the services have been rendered to a boat maritime in character at the time. The C. Vanderbilt (D. C.) 86 Fed. 785, and the many cases cited therein.

It is unnecessary to discuss one question argued in the Vanderbilt Case and as to which difference of opinion is shown, viz. as to whether a lien for wharfage is valid against a vessel in her home port. It is sufficient to say that, even if a wharfage lien can arise in a home port, no such lien can be considered, unless rendered to an object maritime in character, and hence within admiralty jurisdiction. As was said in The J. Doherty, supra, a lien for wharfage arises from the general application of admiralty law. The jurisdiction of admiralty does not depend upon the element surrounding the object, but upon whether it is maritime in its character or use. The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236; Postal Telegraph Co. v. P. Sanford Ross (D. C.) 221 Fed. 105.

In the Vanderbilt Case, supra, it was held that no lien can be considered maritime which does not have to do with a vessel that is engaged in navigation, or is being laid up at a wharf, directly as a preparation for continued navigation; in other words, that wharfage cannot be treated as the basis for a maritime lien, where it is equivalent to storage or dockage of a vessel completely, for the time being, withdrawn from navigation, as if drawn out on the bank, or on ways, to lie like a chattel in storage, entirely separated from its maritime activities. Further, a maritime lien outside the statute can arise only where credit is given to the vessel, and not to the owner or charterers. The J. Doherty, supra.

[2] Without regard, therefore, to any distinction between services rendered to a vessel in her home port, as distinguished from those rendered in any other place, and giving the federal and state statutes the utmost possible extent of application, it is evident that, when the insurance company refused to repair the boat and the owner abandoned her, she ceased to be a maritime object, or an inanimate object being prepared for maritime purposes, and no maritime lien could arise for her care. If she sank or was abandoned in such position as to block the property of another person, the party responsible therefor was

guilty of a tort, for which action in damages would lie, rather than any implied contract to pay for services rendered.

Thus the libelant defeats his own claim of a maritime lien, if he admits that the vessel was abandoned by its owner, and was either allowed to sink through the libelant's own failure to care for the boat, or through the relinquishment by the owner of his rights to treat the vessel as a navigating instrument. It will be noted that if the vessel should subsequently be raised and restored to a condition of maritime activity, the possessory lien would of itself be broad enough to include a charge for storing the vessel; but, again, the amount of damage, which would be measured by the expense of getting the vessel out of the way, and which would be recoverable for her interference with the use of the slip which she was blocking, could not be based upon the theory of giving the vessel credit for allowing her to inflict these damages, and again would not be a maritime lien for wharfage rendered.

In the suit at bar, the libelant had a right to treat the vessel as a structure capable of being repaired, so as to navigate further, just so long as the owner or those responsible for the vessel allowed her to remain there for that purpose. The responsibility to determine when she had been abandoned, or whether she would be abandoned, rested upon the owner, or the insurance company, who might be subrogated to his rights.

The repair bills are for labor, material, and services rendered during this period. It must be inferred that the insurance moneys are sufficient to make this question one of practical moment, and that they are the real object of enforcement of this lien, rather than the old and abandoned hull, which it would seem has been surrendered to the insurance companies, and which has been replaced as the object of this suit by the insurance money.

Until the question was determined as to whether the vessel would be repaired, a charge for wharfage would certainly support a maritime lien, which might become worthless if the boat were ultimately abandoned, but which would be good as against any substantial property interest represented by the boat up to that time. Until the Smith was abandoned, wharfage charges should therefore be treated as a part of the repair bill, and as a sufficient basis for the maritime lien. But the furnishing of a wharf for this purpose ceased on January 11, 1918, when the vessel sank, and after which time she certainly was not, in the contemplation of any of the parties, being repaired, or held pending completion of the repairs, or the adjustment of the payment therefor. After the boat was sunk, the interposition of the question of tort terminated the maritime lien for the repair bill.

The libelant, therefore, should recover a reasonable charge for the use of the wharves up to January 11, 1918, and the question of what would be a reasonable amount therefor will be referred to a commissioner to hear and report. The balance of the claim for wharfage will be dismissed without prejudice to the prosecution of any other cause of action to which the libelant may be entitled.