### THE SUELCO.

### MILLS v. STATES MARINE & COMMERCIAL CO., Inc.

(District Court, E. D. New York. July 7, 1922.)

1. Wharves ⟨key⟩18—Wharfage not a "necessary," so as to give lien, when credit not given to vessel.

Though wharfage is a necessity, it is not a "necessary," in the sense in which that word is used in Jones Act, § 30, subsecs. P, Q, R, giving liens for necessaries, though credit was not given to the vessel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Wharves ⬦18—Wharfage generally the basis of a lien.**

Wharfage is the basis of a maritime lien generally, and even in a vessel's home port.

**3. Wharves ⬦18—Credit for hire of wharf held not given vessel using the wharf.**

Where a vessel was hired to a receiver forwarding cargo therefrom by various vessels, and the contract contained no provision that credit should be extended to any steamer to be docked, the credit was extended to the receiver and not to a vessel which with others used the wharf so as to support a lien for the wharfage against it.

**4. Wharves ⬦18—No lien against vessel for hire of wharf under state law.**

Where a wharf was hired to a receiver forwarding cargo therefrom by various vessels, no lien for wharfage against a vessel using the wharf was given by Lien Law N. Y. § 80, giving a lien for certain supplies and services, including wharfage, when contracted for a vessel, as the debt was not contracted by or for the ship.

In Admiralty. Libel by Henry P. Mills against the steamship Suelco, her boilers, engines, tackle, etc., claimed by the States Marine & Commercial Company, Inc. Libel dismissed.

Foley & Martin, of New York City (James A. Martin, of New York City, and William Shea, of counsel), for libelant.

Noble, Morgan & Scammell, of New York City (Howard Seay and James H. Kirkpatrick, both of New York City, of counsel), for claimant.

CHATFIELD, District Judge. It appears that the Suelco was chartered for two months from the States Marine & Commercial Company, agents for the owner, the Submarine Boat Corporation (the claimant), by one Thomas J. Miggins, receiver of the States Steamship Corporation, which had for some time collected cargo and shipped it from a pier at the foot of North First street, Brooklyn, by various steamers. Cargo thus assembled on the wharf was put into the Suelco between December 20, 1920, and January 10, 1921. By the latter date it was ascertained that sufficient cargo to load the Suelco would not be ready, and the cargo was taken from the Suelco and subsequently forwarded on a smaller vessel. The owner of the wharf then libeled the Suelco, charging $150 a day for wharfage, from December 9, 1920, to January 10, 1921.

Under the terms of the charter of the Suelco, Miggins, as receiver, was to pay all expenses, including fuel, and also a certain specified charter hire, but the owners remained responsible for the ship's stores, insurance, and wages. The crew and officers were furnished by the owner, and were dischargeable only by the owner, with a provision that complaints by the charterer would be properly investigated and acted upon. The owners were also to pay any expenses in case the vessel was compelled to put into port for causes for which the steamer proved responsible. The charter was not a demise. The boat was registered at the port of New York, and the wharfage supplied was therefore in the vessel's home port.

It appears that the States Steamship Corporation first hired the pier in question, beginning August 26, 1920, and that the hire, as well

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as its stevedoring charges, were to be paid by the Congress Coal & Transportation Company, which was booking freight for the steamers. This contract was terminated on September 20, 1920, and Miggins, as receiver of the States Steamship Corporation, entered into a contract in place thereof upon the 6th day of November, 1920. On December 1, 13, 21, 28, 1920, and January 3, 1921, libelants rendered weekly bills to the "receiver and owners States Steamship Company" for the use of this pier. The early December bills were paid, as were those after January 3d. On January 7, 1921, a complete bill for the period from December 15, 1920, to January 3, 1921, containing a charge for 20 days at $150 per day, making $3,000 in all, was rendered, and this bill was never paid. The libelant filed a notice of lien with the county clerk of the county of New York against the Suelco, and later, on the 10th day of January, 1921, began the present action.

It will thus be seen that the libelant, as owner of the wharf, rendered bills to the receiver, and the shippers, under their contract, filed a notice of lien under the statutes of the state of New York, and at the same time claimed a maritime lien against the vessel, professing to have no knowledge of the charter or of its terms, and in this way seeking to avoid the effects of section 30, subsections P, Q, and R, of the Lien Law, included in the Jones Act of June 5, 1920, 41 Stat. 988.

[1] The lien claimed is a maritime lien. Wharfage is, of course, a necessity, but not a "necessary," in the sense in which the word is used in the statute of 1920. The Andrew J. Smith (D. C.) 263 Fed. 1004; The Hatteras, 255 Fed. 518, 166 C. C. A. 586; The J. Doherty (D. C.) 207 Fed. 997; The Muskegon (C. C. A.) 275 Fed. 348.

[2] The state law (section 80, Lien Law; chapter 38, Laws 1909 [Consol. Laws, c. 33]) gives a lien for debts for certain supplies and services, including "wharfage," not made liens by the maritime law when contracted for a vessel. "Wharfage" is the basis of a maritime lien generally, and even in a vessel's home port. The Advance (D. C.) 60 Fed. 766; The C. Vanderbilt (D. C.) 86 Fed. 785; Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373; The Hatteras, supra.

The case of The Andrew J. Smith, supra, illustrates the point. There the boat was abandoned, and not the subject of a maritime lien for matters connected with navigation. The wharfage was evidently not extended on the credit of the boat, and was not a "necessary," under the law of 1910 (Comp. St. § 7783) or the Jones Law.

[3] In the case at bar no notice to the lessor of any charter or its terms was proven. The oral and written contract for the wharf contained no provision indicating that credit for the wharfage should rest upon any steamer to be docked. In fact, the written charter (like The South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386) seems to make the owner responsible as a result of an attempt to make sure that the charterers will be liable on an accounting to the owner. But the question in this case is not whether under such circumstances a lien for wharfage might arise.

The claimant shows that the receiver was using the whole dock and had cargoes for other ships which were actually loaded while the Suelco was there. He thus contends that the receiver was a tenant

and merely allotted space to the Suelco, with no relation arising therefrom between the owner of the wharf and the steamer. The situation is like that of Piedmont Coal Co. v. Atl. Fish. Co., 254 U. S. 12, 41 Sup. Ct. 1, 65 L. Ed. 97, where coal was sold to the owner and allotted by it to various vessels after delivery. No credit could have been extended to the vessels. In this case no credit could have been extended to the Suelco. She or any other vessel could (and in fact other vessels did) use the wharf. The credit was extended to the receiver. He paid part of the bills and for some reason did not pay the bills for the period when the Suelco was loading.

[4] Nor can the state statute avail as the debt was not contracted by or for the ship, but rather by the receiver of the States Steamship Corporation. The wharfage was not ordered for the Suelco by the charterer, nor any of the persons named in subsections Q and R of the Jones Act, whether these persons were appointed by the owner or the charterer. The Suelco was merely at the dock for purposes desired by the lessee of the dock, and no wharfage was ordered from the wharfinger at all.

The libel will be dismissed.