**SOUTHWEST MARINE OF SAMOA, INC., Plaintiff**

**v.**

**The M/V KWANG MYONG #71, its Cargo, Freight,
Equipment, Engines, Mast, Boats, Anchors,
Cables, Chains, Rigging, Tackle, Furniture
and All Other Necessaries Appertaining to the Vessel,
Defendant in Rem**

**and v.**

**KOREA WONYANG FISHERIES CO. LTD.,
a Korean Corporation, STAR-KIST FOODS, INC., and
STAR-KIST SAMOA INC., Defendants in Personam**

High Court of American Samoa
Trial Division

CA No. 105-92

March 23, 1993

Before KRUSE, Chief Justice, MATA'UTIA, Associate Judge,
BETHAM, Associate Judge.

Counsel:     For Plaintiff, Robert A. Dennison III
             For Defendant in Personam Star-Kist Samoa,
             Roy J.D. Hall, Jr.

On Motion for Default Judgment in Rem:

Plaintiff, Southwest Marine of Samoa, Inc. ("SWM"), operates
a ship-repair facility in Pago Pago harbor. Defendant Korea Wonyang

Fisheries Co. Ltd. ("KWF") once operated a number of long-liners (tuna boats), including the M/V Kwang Myong #71, out of the territory. In the past, KWF numbered among SWM's customers; however, at this time KWF, the fishing-boat operator, is no longer around. It has not only left a number of unpaid and unhappy creditors (giving rise to a string of lawsuits[1]), but it has also left, to the consternation of the local Coast Guard station, a number of effectively-abandoned vessels in and around the Pago Pago harbor.[2]

On January 31, 1992, literally in the midst of the hurricane season, the defendant vessel M/V Kwang Myong quietly tied-up, unannounced, at plaintiff's wharf. There it joined a number of other KWF vessels which were already moored there. The crew subsequently left, and the vessel has since sat at plaintiff's wharf "substantially deteriorating . . .[and accumulating] heavy rust all over the decks and decking machinery," as well as posing as a "hazardous threat" to navigation.

On January 30, 1992, SWM filed a separate lawsuit against KWF alleging among other things, unpaid "bills for repairs and services rendered on a periodic basis." *See* Complaint & Amended Complaint, para. 6, *Southwest Marine of Samoa Inc. v. Koram #2 and Korea Wonyang Fisheries Co., Ltd.*, CA No. 15-92. On October 27, 1992, the court entered a default judgment in favor of SWM and against KWF in the sum of $439,395.10, along with attorneys fees and costs.

In the matter before us, however, SWM seeks judgment by default on the very same indebtedness (as it relates specifically to "repairs and services" rendered to the Kwang Myong #71) which was

---

[1] *See YKL Japan Ltd v. Korbee #1*, CA No.07-92; *YKL Japan Ltd v. Koram #2*, CA No. 08-92; *Samoa Export 7 Import Inc., v. Korbee #1*, CA No. 10-92; *Southwest Marine of Samoa Inc., v. Koram #2*, CA No. 15-92; *Samoa Export & Import Inc., v. Korbee #5*, CA No. 17-92; *Pago Pago Petroleum Products, Inc., v. Korbee #6*, CA No. 18-92; *Honor Marine South Pacific Inc., v. Wonyang #2*, CA No. 52-91; *Southwest Marine of Samoa Inc v. Korbee #2*, CA No. 96-92.

[2] As a result of hurricane Val, which occurred at the end of 1991, a number of abandoned long-liners were beached along the Aua/Onesosopo foreshore, where they remain to this day. Their respective owners have mysteriously vaporized as well.

already reduced to judgment in CA No. 15-92. As we understand the argument advanced for this seemingly duplicitous effort, an *in rem* judgment is sought against the vessel (which is itself a separate entity), whereas the judgment rendered in CA No. 15-92 was one *in personam* against the vessel's owner only. Plaintiff then seeks to establish, in this suit against the vessel, its claim against the *res* by arguing that its services rendered to the Kwang Myong #71 gave rise to maritime liens.

We deny the motion for default judgment *in rem*. First, reliance on the ship's "personification" theory is misplaced. While *in rem* and *in personam* claims may be joined, *res judicata* applies from an *in personam* action against a shipowner to an *in rem* action against his ship (and vice versa); and one may not sue twice on the legal fiction that a ship and her owner are two different parties. *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 25 (1960); *see also S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastenata*, 639 F. Supp. 1432, 1437-38 (S.D. Fla. 1986). Thus, "[w]hen the plaintiff has two alternative remedies available to him upon the same 'cause of action,' he may not reserve one and sue upon the other, and a judgment for the defendant upon one will be a bar to a later suit upon the other." *Burns Bros. v. The Central R.R. of New Jersey*, 202 F.2d 910, 913 (2d Cir. 1953) (citing § 65(1) Restatement of Judgments). This case "decisively rejected the theory that *in rem* and *in personam* suits can be successively maintained, on the 'atavistic' notion of the ship's personality." G. Gilmore & C. Black, Jr., The Law of Admiralty, § 9-17, at 614.

Second, we are unable to conclude on the evidence that plaintiff's claim for moorage services rendered is, in fact, maritime in nature. Wharfage charges can give rise to a maritime lien. *Miles v. States Marine & Commercial Co.*, 286 F. 286, 288 (E.D.N.Y. 1922); *see* 1 Benedict on Admiralty § 233, at 15-26 to 15-27. A lien, however, does not arise against a vessel "withdrawn from navigation." *The Andrew J. Smith*, 263 F. 1004, 1005 (E.D.N.Y. 1920); *The Poznan*, 9 F.2d 838, 842-43 (2d Cir. 1925), *rev'd on other grounds New York Dock Co. v. S.S. Poznan*, 274 U.S. 117, 120 (1927). An abandoned vessel is deemed "withdrawn from navigation." *Miles*, 286 F. at 288 (citing *The Andrew J. Smith*).

The vessel in question has been left to sit idle without appropriate maintenance to its hull, decking, and machinery for over a year (through two hurricane seasons), and as a result, it has been steadily deteriorating. We see nothing in the evidence to indicate any further interest in the vessel on the part of KWF or to suggest that the vessel

would ever again go out fishing. Under these circumstances, there is simply no support to SWM's contention that its mooring service may somehow be regarded as being in furtherance of the vessel's maritime purpose; it is, unfortunately, stuck with an abandoned vessel.

The motion for default judgment *in rem* is, therefore, DENIED.

It is so ordered.