**COMMERCIAL BARGE LINES, INC.,** American Commercial Barge Line Company, and Commercial Transport Corporation, Plaintiffs,

v.

**UNITED STATES of America, and Interstate Commerce Commission,** Defendants.

Civ. A. No. 17142.

United States District Court
E. D. Michigan, S. D.

Aug. 21, 1958.

Sparkman D. Foster, Detroit, Mich., Richard J. Hardy, Harold E. Spencer, Nuel D. Belnap, Chicago, Ill., for plaintiffs.

Fred W. Kaess, U. S. Atty., Detroit, Mich., Victor R. Hansen, Asst. Atty. Gen., for United States.

Ribert W. Ginnane, John F. Cushman, Washington, D. C., for Interstate Commerce Commission.

William A. Walker, Walter A. Kleinert, Detroit, Mich., Carl Helmetag, Jr., James N. Mullen, Philadelphia, Pa., James W. Nisbet, J. D. Feeney, Jr., Chicago, Ill., Harry C. Ames, Washington, D. C., Stuart B. Bradley, Chicago, Ill., R. Granville Curry, Frederick M. Dolan, Donald Macleay and Russell S. Bernhard, Washington, D. C., for intervening defendants.

Before SIMONS, Chief Judge, Court of Appeals for the Sixth Circuit, and THORNTON and O'SULLIVAN, District Judges.

THORNTON, District Judge.

A statutory three-judge court was convened pursuant to the complaint filed herein which reads as follows:

"I.

"This is a civil action brought to restrain, annul, enjoin and set aside a report and order of the Interstate Commerce Commission, hereinafter termed 'Commission',

entered on March 20, 1957, in a proceeding entitled *Commercial Transport Corporation—Exemption, Section 303(b) and 303(f) (2), I.C.C. Docket No. 32033,* reported in 300 I.C.C. 66.

"II.

"(a) Plaintiff, Commercial Barge Lines, Inc., hereinafter termed 'Commercial', is a corporation organized and existing under the laws of the State of Indiana, with its principal office at Detroit, Michigan. Said plaintiff is a common carrier by water engaged in the transportation in interstate and foreign commerce of new automobiles and related commodities on the Mississippi, Ohio, and Tennessee Rivers, and on the Gulf Intra-Coastal Canal, under a certificate of public convenience and necessity issued by the Commission pursuant to Part III of the Interstate Commerce Act, as amended (49 U.S.C. sec. 901, et seq.).

"(b) Plaintiff, American Commercial Barge Line Company, hereinafter termed 'American Commercial', is a corporation organized and existing under the laws of the State of Delaware, with its principal office at Jeffersonville, Indiana. Said plaintiff, subsequent to the merger into it of American Barge Line Company on August 1, 1957 pursuant to authority granted by the Commission in its report and order of June 4, 1957, in Docket No. MC-F-6331, is and has been a common carrier by water engaged in the transportation in interstate and foreign commerce, of general commodities on the Mississippi, Ohio and Tennessee Rivers, under a certificate of public convenience and necessity, issued by the Commission pursuant to Part III of the Interstate Commerce Act, as amended (49 U.S.C. sec. 901, et seq.). Prior to August 1, 1957, the corporate name of said plaintiff was Commercial Transport Corporation, hereinafter termed 'Old Transport',

and plaintiff then engaged in the interstate transportation by water of various dry and liquid commodities in bulk on the Mississippi, Ohio, and Tennessee Rivers, and the Gulf Intra-Coastal Canal, without a certificate from the Interstate Commerce Commission under the exemptions provided in sections 303(b) and 303(d) of the Interstate Commerce Act, as amended (49 U.S.C. sections 903(b) and 903(d)), and, under the exception provided in section 303(f) (2) of said Act (49 U.S.C. sec. 903(f) (2)), it also performed towage for other carriers by water of freight moving under regulation provided by Part III of said Act of such other carriers.

"(c) Plaintiff, Commercial Transport Corporation, hereinafter termed 'New Transport', is a corporation organized on July 31, 1957, and existing under the laws of the State of Delaware with its principal office at Houston, Texas. Said plaintiff is a wholly-owned subsidiary of American Commercial. It holds no certificate or permit under Part III of the Interstate Commerce Act, as amended. On and after August 1, 1957, said plaintiff has owned and operated the facilities formerly owned and operated by Old Transport and has engaged in the business of a carrier by water exempt from regulation similar to the business exempt from regulation carried on by Old Transport prior to August 1, 1957, as described in subparagraph (b) immediately above.

"III.

"This complaint is brought, the United States of America is made a defendant, and the jurisdiction of this Court is conferred, pursuant to sections 1336, 1398, 2284 and 2321–2325 of Title 28 of the United States Code, section 1009 of Title 5 of the United States Code, and section 17 (9) of the Interstate Commerce Act, as amended (49 U.S.C. sec. 17(9)).

The Commission is made a defendant as a party in interest.

## "IV.

"(a) Carriers, including the plaintiffs, which operate on the rivers and waterways mentioned in Paragraph II above, generally perform transportation by means of non-self-propelled vessels (barges) with the use of separate towing vessels (towboats).

"(b) Water carriers without common carrier certificates or contract carrier permits issued by the Commission under Part III of the Interstate Commerce Act, as amended (49 U.S.C. sec. 901, et seq.), hereinafter referred to as 'unregulated carriers', may lawfully engage only in services which are exempted from regulation by said Act. Services in interstate and foreign commerce so exempted include, among others, (1) under section 303(b) of said Act, transportation for shippers of not more than three commodities in bulk in one tow (one or more barges handled as a unit), such a tow being hereinafter termed a 'solid bulk tow'), and (2) under section 303(f) (2) of said Act, the towing for another water carrier of a barge loaded with non-bulk freight when said barge is moving subject to Part III of said Act on the bill of lading and within the limits of the certificate or a permit of such other water carrier, said service being hereinafter termed 'towage'.

"(c) A tow in which a water carrier performs towage and, in addition, transports for shippers in its own name three or less commodities in bulk, which tow would be a solid bulk tow if the barge of non-bulk freight being towed were not included therein, is hereafter termed a 'mixed tow'.

"(d) In 1944, representatives of certain water carriers through correspondence with the Commission, true and correct copies of the letters comprising said correspondence being attached hereto as Exhibit A, asked the Commission to rule on the question of whether the operation by an unregulated carrier of such a mixed tow made inapplicable the section 303(b) exemption as to the bulk commodities transported therein and subjected the transportation of said bulk commodities to Part III of the Interstate Commerce Act.

"(e) In a letter dated March 27, 1944, written by John F. Girault, Assistant Director, Bureau of Water Carriers and Freight Forwarders, at the direction of Commission, Division 4, it was ruled that the section 303(b) exemption does embrace the transportation of bulk commodities included in such a mixed tow and that such transportation of bulk commodities is not made subject to the Act by the addition to the tow of the barge of non-bulk freight being towed therein. A true and correct copy of said letter is attached hereto as Exhibit B.

## "V.

"For many years after 1944, many regulated carriers by water in reliance on said ruling secured towage from unregulated carriers, which towage was performed by such unregulated carriers in mixed tows. The Towage which was secured by Commercial from Old Transport was so performed in reliance on said ruling. Early in 1956, in protests filed in opposition to the proposed merger of American Barge Line Company into Old Transport and the proposed transfer of the facilities and business of Old Transport to New Transport if that merger were approved and consummated, that transaction being the subject matter involved in Docket No. MC-F-6331, protesting interests urged that the operation of a mixed tow as above defined and as then operated by Old Transport was unlawful. To re-

move uncertainty as to that matter, Commercial and Old Transport by joint petition filed August 15, 1956, requested the Commission to institute an appropriate proceeding for the purpose of issuing a declaratory order under the provisions of section 5(d) of the Administrative Procedure Act (5 U.S.C. sec. 1004(d)) as to the construction and application of the exemptions from regulation provided in section 303(b) and 303 (f) (2) of the Interstate Commerce Act, as amended, to the services rendered in the operation in interstate and foreign commerce of a mixed tow as defined in paragraph IV(c) hereof. A true and correct copy of said petition is attached hereto as Exhibit C.

## "VI.

"By order of September 28, 1956, a true and correct copy of which is attached hereto as Exhibit D, the Commission, Commissioner Mitchell, instituted the investigation requested by said petition.

## "VII.

"Thereafter, the plaintiffs and other parties filed briefs, affidavits or representations which contained data, views and argument addressed to the questions stated in said order of the Commission instituting the investigation. On March 20, 1957, the Commission, Division 4, issued its report and order in said investigation, which is the report and order sought to be enjoined. A true and correct copy of said report is attached hereto as Exhibit E, and a true and correct copy of said order is attached hereto as Exhibit F. In and by said report and order the Commission, Division 4, reversed the ruling announced in 1944 and held that the operation of a mixed tow as described in paragraph IV(c) hereof makes subject to regulation the transportation of the bulk commodities included in such a mixed tow.

## "VIII.

"On or about April 22, 1957, Commercial and Old Transport petitioned the Commission for reconsideration with respect to the order of Division 2 of March 20, 1957. The Commission denied said petition by order of June 17, 1957, a true and correct copy of said order being attached hereto as Exhibit G.

## "IX.

"(a) Observance of the rule announced in the report and order sought to be enjoined will limit and handicap the plaintiffs, Commercial and American Commercial, with respect to the towboats available for hire by them for the purpose of towing their barges loaded with non-bulk commodities since a towboat operated by an unregulated carrier cannot be hired for any voyage if said towboat on the same voyage and in the same tow is handling a solid bulk tow as above defined, and said plaintiffs will be injured thereby.

"(b) Observance of the rule announced in said report and order will limit and handicap the plaintiff, New Transport, in the operation and use of its towboats since it will be unable to devote such towboats to the performance of towage on any voyage in which said towboats are engaged in the transportation for shippers of any bulk commodity in the same tow, and said plaintiff will be injured thereby.

"(c) If plaintiffs fail to observe the rule announced in said report and order, they thereby subject themselves to the risks of criminal prosecution.

## "X.

"The report and order of the Commission attached hereto as Exhibits E and F are arbitrary, unlawful, and beyond the power of the Commission to enter because said report and order rest on a misconstruction and an erroneous application of sections

303(b) and 303(f)(2) of Part III of the Interstate Commerce Act and deprive the plaintiffs of rights with respect to their operations and the use of their facilities granted to them by the Interstate Commerce Act, as amended.

"By reason of the arbitrary and unlawful acts of the Commission with respect to the ruling in its report and order of March 20, 1956, plaintiffs are left without adequate remedy at law and will be irreparably damaged if the relief hereinafter prayed is not granted.

"Wherefore, plaintiff prays:

"1) That, pursuant to the statutes referred to in paragraph II hereof, there shall be constituted to hear this case a special Court of three Judges, one of whom shall be a Circuit Judge.

"2) That process issue against defendants, United States of America and Interstate Commerce Commission.

"3) That, upon final hearing of this action, the Court adjudge that the report and order of the Commission are unlawful, beyond the power of the Commission, arbitrary, and based upon a misconstruction and erroneous application of the Interstate Commerce Act, as amended, and that a decree be entered setting aside, annulling, suspending and perpetually enjoining the enforcement of the rule announced in said report and order, and that plaintiffs have such other and further relief as the Court may deem proper in the premises."

Insofar as here pertinent, Section 303 (f)(2) [49 U.S.C.A. 903(f)(2)] reads as follows:

"Notwithstanding any provision of this section or of section 302, the provisions of this part shall not apply— * * *

"(2) to transportation by water by any person (whether as agent or under a contractual arrangement) for * * * a water carrier subject to this part, in the performance * * * of towage; but such transportation shall be considered to be performed by such carrier * * * as part of, and shall be regulated in the same manner as, the transportation by * * * water to which such services are incidental."

Section 303(b) [49 U.S.C.A. 903(b)] provides:

"Nothing in this part shall apply to the transportation by a water carrier of commodities in bulk when the cargo space of the vessel in which such commodities are transported is being used for the carrying of not more than three such commodities * * * For the purposes of this subsection two or more vessels while navigated as a unit shall be considered to be a single vessel * * *"

The finding of the Interstate Commerce Commission was as follows:

"We find that the transportation of commodities in bulk in a unit with nonbulk commodities is not transportation exempt from regulation under the provisions of section 303(b) of the act; and we further find that incidental towage performed for other carriers subject to the act is exempt from regulation under the provisions of section 303(f)(2) where a barge or barges of nonbulk commodities are towed in the same unit with bulk commodities, and that this finding would be the same irrespective of whether or not there is a relationship, corporate or otherwise, between the tower and other carriers. An order will be entered discontinuing the proceeding." 300 I. C.C. 71.

Plaintiffs argue that because the nonbulk part of such unit of transportation is exempted under section 303(f)(2), its presence in the unit should be disregarded in determining whether the balance of the unit (bulk) qualifies for exemption under 303(b).

In their briefs and on oral argument, plaintiffs suggest that there is a conflict between 303(f)(2) and 303(b); that once a carrier is exempted from regulation by virtue of 303(f)(2) it becomes, in effect, insulated or immunized from the operation of 303(b). The Interstate Commerce Commission concluded as a matter of law that plaintiffs' contention as to the proper construction of 303(b), when read together with 303(f)(2), is not sound. The Commission construed 303(b) adversely to the plaintiffs, and we are unable to set aside its report and order because we believe that its legal conclusion was not erroneous.

Plaintiffs' briefs review the legislative history of the statutes involved, and urge upon us the necessity of construing these two sections to give what they call harmonious effect to both. We find no necessity for reviewing either legislative history or previously adjudicated cases, because we find the language of each section clear and not in conflict. The Supreme Court in United States v. Missouri Pacific R. Co., 278 U.S. 269, 277–278, 49 S.Ct. 133, 136, 73 L.Ed. 322 enunciates the principle which guides us here:

"The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed, and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. It is elementary that, where no ambiguity exists there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written must be relieved by legislation * * * Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure, and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed."

■■■ We find no ambiguity in the plain, easily readable language of 303 (b). It seems obvious that by the enaction of 303(b), Congress intended to provide an exemption for a water carrier transporting commodities in bulk where no more than 3 bulk commodities are being transported * * * "not more than three such commodities" is the test, nothing more, nothing less. Either a prospective exemptee meets the test or does not. It is that simple. If there is any doubt in the mind of one reading the first part of the section, such doubt becomes resolved when one reaches this sentence: "* * * For the purposes of this subsection two or more vessels while navigated as a unit shall be considered a single vessel * * *" Section 303(b) is providing an exemption from regulation of a vessel (stated as including 2 or more vessels being navigated as a unit) where no more than 3 bulk commodities are being carried. This means that the unit must be considered in its entirety in order to appraise the impact of 303 (b) on it. The test is laid down in 303 (b), and that is all that is necessary. The makeup of the cargo is determinative as to 303(b). If the physical makeup of the "vessel" does not come within the 303(b) exemption, then how can plaintiffs seriously claim its benefit? As to 303(f)(2) an exemption is provided where simple towage is involved. The 303(f)(2) exemption has application to the particular situation outlined therein. No complicated theorizing is necessary to explain that which is apparent.

An appropriate order or orders may be presented.