**GULF CANAL LINES, INC., Commercial Transport Corporation, Valley Line Supply and Equipment Company, Mississippi Valley Barge Line Company, Federal Barge Lines, Inc., American Commercial Barge Line Company, corporations, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 13649.**

United States District Court
S. D. Texas.

Aug. 26, 1966.

Royston, Rayzor & Cook, Houston, Tex., Mayo Thompson, Houston, Tex., for plaintiffs.

Woodrow Seals, Houston, Tex., for United States.

Fritz R. Kahn, Washington, D. C., for ICC.

Alan S. Dale, Houston, Tex., for John I. Hay Co.

W. C. Scurry, Dallas, Tex., Scurry, Scurry, Pace & Wood, Dallas, Tex., for Waterways Bulk Transportation Council, Inc.

Before HUTCHESON and BROWN, Circuit Judges, and INGRAHAM, District Judge.

JOHN R. BROWN, Circuit Judge:

By this suit[1] plaintiffs[2] seek to enjoin and set aside an order of the Interstate Commerce Commission entered in Mississippi Valley Barge Line Co., 311 I.C.C. 103 (1960).[3] The question here is whether the three-bulk-cargo exemption from regulation of Sec. 303(b) of the Act, 49 U.S.C. Sec. 903(b), continues to apply to an originating unregulated carrier where during a portion of the through trip the movement is performed for the originating carrier by a regulated tower who physically intermingles barges carrying non-bulk commodities with the barges of the originating carrier carrying bulk commodities. The Commission determined that the inclusion of non-bulk commodities during any portion of the through trip placed the entire carriage outside the exemption of Sec. 303(b) and subjected the originating carrier to Commission regulation. As we analyze the Commission's ruling we are convinced of its correctness and accordingly it is sustained.

This proceeding originated before the Commission on petitions[4] requesting a declaratory order to remove uncertainty as to the construction and application of the Sec. 303(b) exemption. The petitions sought answers to questions based

---

1. This action is brought under Secs. 1336, 1398, 2284 and 2321–2325 of the Judicial Code, 28 U.S.C. Secs. 1336, 1398, 2284, and 2321–2325, Sec. 17(9) of the Interstate Commerce Act, 49 U.S.C. Sec. 17(9) and Sec. 10 of the Administrative Procedure Act, 5 U.S.C. Sec. 1009.

2. The six plaintiffs are all barge line companies engaged in interstate commerce common carriage by water in non-self-propelled barges with the use of separate towing vessels. Three of them, American Commercial Barge Line Company, Federal Barge Lines, Inc., and Mississippi Valley Barge Line Company, are certificated common carriers by water authorized by their respective certificates to perform water carriage, including general towage for published, regulated towage rates (see note 5 infra). The three others, Gulf Canal Lines, Inc., Commercial Transport Corporation, and Valley Line Supply and Equipment Company, are non-certificated water carriers engaged in non-regulated activities including affreightment of bulk commodities exempt from regulation when transported within the conditions of Sec. 303(b) of the Act (see note 5 infra). These three exempt carriers, on occasion, employ one or the other of the three certificated carriers to perform towage of bulk-loaded barges in completion of contracts of affreightment between the exempt carriers and shippers of bulk commodities. Unless otherwise indicated, as used herein "plaintiffs" refers collectively to all six plaintiffs.

3. The Commission's order became administratively final on April 25, 1961, upon denial of a petition for reconsideration.

4. The initial petitioners before the Commission were the three certificated plaintiffs (note 2 supra), American, Federal, and Mississippi Valley. John I. Hay Company and Coyle Lines, Inc., filed a separate petition. Additional interested parties intervened during the Commission proceedings. On this suit the three certificated plaintiff-carriers are joined in attacking the Commission's order by the three exempt carrier-plaintiffs (note 2 supra), Gulf Canal, Commercial, and Valley Supply. The defendants are the United States and the Interstate Commerce Commission. Hay entered an appearance in support of the Commission's order, as did Waterways Bulk Transportation Council, Inc.

on hypothetical statements of fact. The factual framework presented on this appeal, and to which the Commission addressed its order, is as follows: [5]

NON BULK

BULK

A's CONTRACT OF AFFREIGHTMENT WITH SHIPPER

B's CONTRACT OF TOWAGE WITH A

BULK

B

X

A

BULK

Y

Z

5. The diagram and factual description are taken verbatim from Brief for Plaintiffs, p. 8. This presentation accurately and simply summarizes the actual hypotheticals before the Commission, set forth in an appendix to the Commission's order, 311 I.C.C. at 109–110.

As used by the parties and in this opinion the terms employed have this meaning:

(1) A "bulk commodity" is defined in Sec. 303(b) of the Act as one which is "loaded and carried without wrappers or containers and is received and delivered by the carrier without transportation mark or count."

(2) A "bulk-exempt" carriage is defined in Sec. 303(b) as "two or more vessels while navigated as a unit," the cargo space of which "is being used for the carrying of not more than three such [bulk] commodities."

(3) "Towage" or "tower" pertains to that carriage or carrier by water where the transporter furnished only the non-cargo carrying power equipment for the movement of commodities loaded in barges furnished by others.

(4) "Bulk-exempt towage" is towage of bulk-loaded barges in a tow exempt from regulation under the Act.

(5) "Incidental towage" is towage of barges in a tow exempt from regulation under Sec. 303(f) (2) of the Act (49 U.S.C. Sec. 903(f) (2)).

(6) "Regulated" or "general" towage is a form of common (or contract) carriage by water subject to certificate and rate regulation by the Commission under the Act.

(7) "Affreightment", "freightage", or "freighting" pertains to that carriage by water where the transporter undertakes to furnish all of the instrumentalities of

Carrier A in this hypothetical situation enters a contract of affreightment with a shipper of bulk grain to transport a shipment of bulk grain from X to Z. Carrier A furnishes a barge for this freightage service and tows that barge in a bulk exempt tow to intermediate point Y where it engages Carrier B—who is authorized to provide regulated towage of grain between the points in question—to tow the barge to destination Z for the published towage charge. The shipper of bulk is not a party to the contract of towage, nor is the tower (Carrier B) party to the contract of affreightment. Carrier B's movement of the bulk-loaded barge from Y to Z is in a mixed tow intermingled with non-bulk being transported by B subject to regulation.

The question posed based upon this factual setting was whether the inclusion by the tower, Carrier B, of the non-bulk commodities with Carrier A's bulk-loaded barges for a portion of the through trip covered by Carrier A's contract with the bulk-shippers deprives Carrier A of Sec. 303(b) three-bulk-cargo exemption during (1) that part of the movement (Y to Z) performed by Carrier B, as tower, in which Carrier A's bulk-loaded barges are included in a mixed tow; or during (2) the entire through trip (X to Z) for which Carrier A had contracted. The Commission ruled that the inclusion of non-bulk during any portion of the through trip destroyed the Sec. 303(b) exemption otherwise applicable to Carrier A and operated to subject to regulation Carrier A's contract of affreightment with the bulk shippers for the entire trip.

Plaintiffs assail this holding on two grounds. First, they emphasize that the Commission's interpretation of the Sec. 303(b) exemption requires not only that the express conditions of Sec. 303(b) (a cargo of not more than three bulk commodities) be met, but also that the cargo contain no non-bulk commodities. In other words, there may be no mixing. This "Commission-imposed" requirement is said to be improper and insupportable under the language of the statute. Second, plaintiffs vigorously assert that the status of the exempt carrier (Carrier A) cannot be disturbed or destroyed because of the addition of non-bulk commodities to an otherwise exempt cargo by a certificated, fully regulated tower employed by the exempt carrier to supply towage under towage tariffs for all or a portion of the through trip covered by the exempt carrier's contract.

At this late date no serious question is raised by plaintiffs' first argument. The language of Sec. 303(b) is plain and easily understandable:

"(b) Nothing in this chapter shall apply to the transportation by a water carrier of commodities in bulk when the cargo space of the vessel in which such commodities are transported is being used for the carrying of not more than three such commodities. This subsection shall apply only in the case of commodities in bulk which are * * * loaded and carried without wrappers or containers and received and delivered by the carrier without transportation mark or count. For the purposes of this subsection two or more vessels while navigated as a unit shall be considered to be a single vessel. * * * *"[6].

The exemption applies only to a cargo consisting of three or less bulk commodities. It is the physical makeup of the cargo that determines whether the cargo is exempt under this section. And it is clear that the cargo must be considered in its entirety in appraising the impact of Sec. 303(b) on it. There is no reference whatsoever to non-bulk commodi-

carriage, specifically including the cargo-carrying barge.

(8) "Bulk-exempt" freightage is freightage of bulk-loaded barges in a tow qualifying for the Sec. 303(b) exemption.

(9) "Regulated" freightage is freight-

age subject to certificate and rate regulation by the Commission under the Act.

(10) "Mixed tow" is a tow in which both bulk and non-bulk (regulated) commodities are carried.

6. Sec. 303(b), 49 U.S.C. Sec. 903(b).

ties. These considerations certainly justify, if they do not compel, the Commission's determination that the inclusion in a single tow of non-bulk commodities places the bulk cargo outside the ambit of the Sec. 303(b) exemption. And in light of the wealth of Commission decisions to this effect,[7] rendered as they were by the agency charged with administration of the Act, we are doubly sure that we should give approval to this long-maintained determination. See Brotherhood of Maintenance of Way Employes v. United States, 366 U.S. 169, 179, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961).

Plaintiffs' major attack is made upon the Commission's holding that the inclusion by Carrier B of non-bulk commodities in the otherwise exempt bulk cargo subjects Carrier A to regulation for the entire through trip. Assuming that mixing non-bulk with bulk commodities destroys the Sec. 303(b) exemption (as we have held above), plaintiffs ask *whose* exemption is destroyed by that mixing —the tower who mixed (Carrier B), or the freighting carrier (Carrier A) who engaged the tower.

For some years now the Commission has struggled to define the exact scope of the three-bulk-cargo exemption of Sec. 303(b). To understand fully the Commission's ruling in the instant case and our own views with regard to it, a brief survey of the exemption and several of the decisions construing it is helpful.

Part III of the Act, 49 U.S.C. Sec. 901 et seq., was enacted in 1940 and included the three-bulk-cargo exemption of Sec. 303(b). Shortly thereafter the Commission's staff ruled that a bulk-exempt cargo lost its exemption upon the inclusion of non-bulk commodities. Administrative Ruling No. 6, CHH Fed.Carr. Rep. para. 25406 (March 20, 1941). As previously pointed out, the Commission has consistently adhered to this view (note 7 supra).

Of importance to our case are two relatively recent decisions of the Commission. In American Barge Line Co., 294 I.C.C. 796 (1955), Carrier A[8] issued a through bill of lading to shippers of bulk commodities for the transportation of the bulk cargo from Port X to Port Z. Carrier A physically performed a part of the through transportation, but at an intermediate point (Port Y) it employed Carrier B to tow the bulk-loaded barges for the remainder of the voyage. In performing this towage of the bulk-loaded barges Carrier B included barges subject to regulation. At issue was the status of B, the tower. It was argued that the towage of the bulk-loaded barges by Carrier B was "incidental" [under Sec. 303(f) (2)] to the through transportation undertaken by Carrier A and thus should not be considered as transportation subject to regulation by Carrier B in a mixed tow. The Commission found otherwise. It ruled that since Carrier B had included non-bulk commodities with bulk commodities—an act which Carrier A could not do and retain the exemption of Sec. 303(b)—the towage by Carrier B was not incidental to Carrier A's transportation for the bulk shippers. It concluded that Carrier B was not exempt under Sec. 303(b), but rather this towage was subject to regulation because of the transportation of bulk and non-bulk cargoes. And of significance to our case, the Commission also commented on the exempt status of Carrier A. It decided that the mixing of bulk and non-bulk by the tower, Carrier B, subjected the tower to regulation for only that portion of the trip in which a mixed tow was present, (Y to Z), and

---

7. See e. g., Commercial Transp. Corp., 300 I.C.C. 66, 71 (1957), sustained sub nom. Commercial Barge Lines, Inc. v. United States, 166 F.Supp. 867 (E.D.Mich.1958), aff'd per curiam, 359 U.S. 342, 79 S.Ct. 896, 3 L.Ed.2d 927 (1959); American Barge Line Co., 294 I.C.C. 796, 799 (1955), and the cases there cited.

8. The party (Carrier A, B, etc.) and place (X, Y, Z) designations here utilized correspond to those employed in the factual hypothetical presented in the case at bar.

did not affect the exempt status of the bulk-only leg (X to Y) of the trip.[9]

The second case is Commercial Transp. Corp., 300 I.C.C. 66 (1957).[10] There Carrier A,[11] an unregulated carrier, entered a contract of affreightment with shippers of bulk commodities to transport such commodities as bulk-exempt cargoes from Port X to Port Z. Carrier B was a regulated common carrier by water with contracts of affreightment for transporting regulated commodities in the areas served by Carrier A. Occasionally Carrier B employed Carrier A as a tower of its non-bulk-loaded barges which were, of course, subject to regulation. On these instances Carrier A included Carrier B's non-bulk-loaded barges in the tow of its own bulk-loaded barges. Again at issue was the status of the tower, in this case Carrier A. Carrier A contended that since Carrier B's non-bulk-loaded barges were towed "incidentally" by Carrier A for another carrier (Carrier B), they were thus exempt from regulation under Sec. 303(f) (2) of the Act.[12] Consequently the fact that such barges were included in Carrier A's otherwise bulk-exempt tow should not destroy that exemption and subject the towage to regulation. The Commission, relying on *American Barge Line Co.,* supra, held to the contrary. The Commission first acknowledged Carrier A's status as an "incidental" tower under Sec. 303(f) (2). "It is clear that when a towing service is performed by a person [Carrier A] for a water carrier [Carrier B] which is engaged in * * transportation subject to regulation under * * * the Act, that the intention cf Congress was not to subject to separate and additional regulation the person [Carrier A] performing the incidental towing service." 300 I.C.C. 66, 69.

Consequently, viewing the "sole issue" to be "the proper application of Sec. 303 (b) * * *", the Commission ruled that the inclusion of the non-bulk-loaded barges with the bulk-loaded barges destroyed the Sec. 303(b) three-bulk-cargo exemption to which Carrier A would otherwise have been entitled.

■ This brings us to the Commission decision now before us for review. Here the issue is the status of the affreighting carrier (Carrier A), not the status of the tower (Carrier B). Of course it is the tower (Carrier B) who complains, not because it befriends unregulated exempt bulk carriers (Carrier A) but because this denies to the tower the right to seek and obtain towage business to be performed at rates and under conditions prescribed by lawfully filed towage tariffs.

On this hypothesis Carrier A contracts for a through shipment of bulk commodities to be transported as a Sec. 303 (b) exempt tow. Carrier B, a regulated tower, is hired to tow the bulk-loaded barges for a portion of the through trip, and while so doing the tower, Carrier B, includes in the tow barges loaded with non-bulk commodities. In answering the

---

9. The Commission stated its views at 294 I.C.C. 799–800:

"Because of the issuance by carrier A of its bill of lading to the shipper by which the carrier contracts to transport a bulk commodity the entire distance from the origin on carrier A to the destination on carrier B, the contention is advanced that in these circumstances the entire movement must be considered as an entity and thus be either exempt or nonexempt. This contention is without merit. The issuance of a so-called through bill of lading is a mere incident and is not indicative of the exempt or nonexempt status of the transportation service. The well-established principle just referred to that the inclusion of non-bulk commodities in a tow with a bulk commodity has the effect of subjecting the entire cargo to regulation may not be extended to include the part of a multiple-carrier, line-haul transportation only of a bulk commodity in the circumstances here presented. * * *."

10. Sustained sub nom. Commercial Barge Lines, Inc. v. United States, 166 F.Supp. 867 (E.D.Mich.1958), aff'd per curiam, (1959) 359 U.S. 342, 79 S.Ct. 896, 3 L.Ed.2d 927.

11. See note 8, supra.

12. 49 U.S.C. Sec. 903(f) (2).

question as to the status of Carrier A the Commission ruled that Carrier B's mixing took Carrier A's contract of affreightment out of the exemption of Sec. 303(b) for the entire trip.

Plaintiffs strenuously assault this conclusion. Even accepting the Commission's position that mixing destroys the Sec. 303(b) exemption, plaintiffs assert that the exemption is lost only by Carrier B and then only for Carrier B's portion of the trip. This they say is only reasonable, since Carrier B has in fact physically mixed bulk with non-bulk, and since it is only during Carrier B's portion of the trip that mixing occurs and exists. They further contend that this conclusion is demanded by the *American Barge Line Co.* decision by virtue of the Commission's statement in that case (see note 9 supra) regarding the exempt status of Carrier A. Essentially their argument is that the mixing in Carrier B's tow can operate only to regulate Carrier B's towage *or* Carrier A's freightage, *but not both.* Consequently, the argument runs, since the Commission has heretofore held that Carrier B's towage is subject to regulation, it is now inconsistent, and totally improper, to hold that Carrier A's operations also are subject to regulation.

This argument has much force. Carrier B, whose towage must be regulated under previous Commission rulings, and whose towage in the instant case is performed pursuant to authorization by, and under regulated rates filed with, the Commission, is legally obligated as a regulated carrier to accept and transport tows offered to it, regardless of the *source* of that tow. Plainly Carrier B's performance of its towage agreement with Carrier A is legal. Thus it is energetically argued that since Carrier B's towage is legal and in compliance with Commission authorization, and therefore does not in any manner rest on any exemption, it should have no effect

whatsoever on Carrier A's status as an exempt carrier under Sec. 303(b). The Commission, so the argument runs, has ample resources to control the transportation through regulation of the tower. This is the theory both of the "incidental towage" exemption under Sec. 303 (f) (2), and the regulation of towage as such. See Cornell Steamboat Co. v. United States (1944), 321 U.S. 634, 64 S.Ct. 768, 88 L.Ed. 978.

To this they add the further fact that what *American Barge Line* held not to be towage "incidental" to the operations of the bulk carrier under Sec. 303(f) (2) is now considered to be such.[13] And the rationale becomes all the more confusing since it now repudiates as ill-considered dictum the earlier declaration (See note 9, supra) that the through bill of lading shipment would not subject Carrier A to regulation during the unmixed leg (X to Y).

This leads the plaintiffs to offer this as a recapitulation: " * * * the Commission report here under review would hold to be regulated the freighting service by carrier A which the 1955 ruling [American Barge Line] concluded was exempt, and would hold to be 'incidental', the towage by carrier B which the 1955 ruling had found 'not incidental' and 'not exclude[d] from regulation'."

But notwithstanding these conceptual discrepancies and undulations, we are compelled to the conclusion that the Commission's ruling in our case not only is sufficiently consistent with its own decisions, but also is a reasonable interpretation of the Sec. 303(b) exemption as well. The plaintiffs correctly observe that the Commission has denied the Sec. 303(b) exemption in situations similar to the present case *because of the physical mixing of non-bulk commodities with bulk commodities.* Without question physical intermingling of bulk and non-bulk commodities occurs here. And

13. The report states:
"Under the circumstances posed * *, when Carrier A engages Carrier B to supply the power * * * it * * in effect, merely engages B as the incidental tower. * * * " 311 I.C.C. 103, 107.

this, we believe, effectively extinguishes the Sec. 303(b) exemption for *all* carriers who during the time the mixing occurs perform "transportation" services essential to consummating the affreightment contract.

In *American Barge Line Co.* and *Commercial Transp. Corp.*, the Commission looked to the status of the *tower* and held it subject to regulation. We cannot agree that these decisions preclude regulation of the originating carrier, here Carrier A.[14] For the transportation of the bulk commodities, even while in Carrier B's tow, is transportation for which Carrier A contracted and for which it is responsible. This is so notwithstanding Carrier A's use of Carrier B, an independent agency, to effectuate the actual physical movement of the bulk cargo. The contract of towage between Carrier A and Carrier B was merely a convenient means employed by Carrier A to accomplish its contractual obligations to the bulk shippers.[15]

Thus the movement of the bulk commodities from Port X to Port Z—the entire trip for which Carrier A contracted with the bulk shippers—was transportation by Carrier A, on its own or through intermediaries, in furtherance of its contract of affreightment. We hold, in agreement with the second thoughts of Commission, that since Carrier A is responsible for the entire through trip, it cannot claim the benefits of the Sec. 303 (b) three-bulk-cargo exemption unless the conditions of that section are strictly observed throughout the entire trip.

■ This of course does not mean that Carrier A cannot seek and obtain towage by independent towers to assist it in fulfilling its contracts of affreightment with bulk shippers. But it does mean that if Carrier A does so, then to retain the Sec. 303(b) exemption it must see to it that the towage performed by these other carriers complies with the conditions of that section. The result is that during the course of a through movement for which it has contracted with shippers of bulk Carrier A cannot employ transportation facilities which will cause or bring about a mixture of non-bulk and the bulk commodities for which Carrier A claims an exemption.[16] To this extent Carrier A is less free to arrange its affairs as it sees fit than are other originating carriers and shippers. Whereas generally a carrier may con-

14. We would add that our position is not intended to and does not require regulation of both Carrier A's affreightment and Carrier B's towage. Our holding, and that of the Commission, is that Carrier A's affreightment for the entire trip becomes subject to regulation by virtue of the mixing that occurs during Carrier B's towage in furtherance of that affreightment. Since Carrier A is, and must be, thus a regulated carrier, then Carrier B's towage clearly comes within the provisions of the Sec. 303(f) (2) "incidental towage" exemption. And while apparently this is contrary to the Commission's holding in *American Barge Line Co.*, yet in that case the only question concerned the status of the tower, Carrier B. The Commission readily admitted during oral argument that its holding in the present case, that Carrier A is subject to regulation, would enable Carrier B now to qualify for the incidental towage exemption of Sec. 303(f) (2).

15. Carrier A contracted with the bulk shippers for the entire trip, and thus was obligated to transport the bulk commodities from Port X to Port Z. And Carrier A's movement of the bulk commodities by means of towage supplied by Carrier B plainly was "transportation" by Carrier A within the definition of that term under the Act. Section 302(h) of the Act, 49 U.S.C. Sec. 902(h), defines "transportation" to include "the use of any transportation facility (*irrespective of ownership* or of any contract, express or implied, for such use) * * *" (emphasis added). "Transportation facility" is defined in Sec. 302(g) of the Act, 49 U.S.C. Sec. 902(g), as "any vessel * * * or any other instrumentality or equipment of any kind, used in or in connection with transportation by water subject to this chapter."

16. We do not mean to imply that Carrier A should or would lose its exempt status were mixing to occur inadvertently through the act of an independent agency (such as Carrier B) which Carrier A could not have foreseen or controlled (as where accidental mixing occurred).

tract with a regulated tower for towage of vessels and not be concerned with, or penalized for, what that tower does with those vessels, a party who claims the exemption of Sec. 303(b) and utilizes towers—even regulated towers—in connection with the movement of bulk-exempt cargoes must see to it that the towers refrain from mixtures which forfeit the Sec. 303(b) exemption. The price for bulk exemption is no mixing. The price may be high. But so long as the anti-mixing rule survives this puts the exempt carrier under a double restraint; the exempt carrier may not mix; nor may he use otherwise available facilities which result in mixing. The sanction is not therefore on the tower. Rather it is directly on the one claiming exemption.

We are, as we have several times pointed out, fully aware of the Commission's statement in *American Barge Line Co.* regarding the exempt status of Carrier A.[17] While apparently at odds with the position now taken by the Commission, this does not bind us. The Commission has two explanations. First, as noted by the Commission in the order here under attack, the principal question in *American Barge* was the status of Carrier B, the tower. The language relied on by plaintiffs herein was not at all necessary to the ruling in that case. And the Commission avoided any general statement regarding the exempt status of Carrier A. It carefully hedged its discussion with "in the circumstances here presented". Next, it makes it quite plain that it no longer adheres to that view. As would a court, the Commission we suppose has the right, indeed the duty, to change its mind when it sees the error of its ways.

■ We are convinced that the Sec. 303(b) exemption applies only if at no time during the entire through trip for which the exemption is claimed bulk and non-bulk commodities are not to be transported in the same tow. Here that requirement is not met. The Commission

was correct in ruling that Carrier A is not exempt, and accordingly its order will be sustained and plaintiff's complaint will be dismissed. As the issue is perhaps of extraordinary importance and has many built-in difficulties, our order will postpone the effective date of the Commission's order until final action by the Supreme Court if an appeal is timely taken.

If, as argued so strenuously, this application of Sec. 303(b) brings about transportation inefficiencies which discriminate against regulated carriers of bulk commodities, or regulated towers, or both, the remedy is to be in Congress. Through the Commission and otherwise it has been made aware of these problems and their possible consequences. If Congressional handiwork now produces unwanted results it is for Congress, not the Judiciary, to right the machinery.

Order enforced.

Petition dismissed.

---

17. See note 9 supra and accompanying text.