BAILES, Judge.
The plaintiff, Bunge Corporation, the operator of a grain elevator at Destrehan, St. Charles Parish, Louisiana, brought this suit against Federal Barge Lines, Inc., Sioux City and New Orleans Barge Lines, Inc., and Mississippi Valley Barge Line Company to recover dockage fees charged by plaintiff for the use of its dock facilities which it operated on the Mississippi River in connection with its grain elevator.
Plaintiff seeks to recover a total of $20,440.00 from the three named defendants, which by the time the case was tried in district court had increased, through continued alleged use by defendants of the facility to an alleged indebtedness of $27,220.00.
The trial court rejected the demands of the plaintiff, at its cost, thus this appeal. We conclude the judgment of the trial court is correct, and accordingly, affirm the judgment.
*732 On this appeal, plaintiff assigns six specifications of error, which we quote from its brief:
“ASSIGNMENT OF ERRORS
“A. The District Court erred in failing to apply maritime law principles in reaching a determination as to the status of the transaction in dispute.
“B. The District Court erred in not concluding that the dockage transaction at issue was a maritime contract.
“C. The District Court erred in concluding that no contractual or quasi-contractual basis for plaintiff’s claim existed.
“D. The District Court erred in concluding that defendant barge companies do not ‘use’ plaintiff’s dock.
“E. The District Court erred in concluding that plaintiff was the ‘consignee’ of grain in each transaction, and further erred in concluding that no benefit accrued to the barges by reason of plaintiff’s dock.
“F. The District Court erred in not applying the principles of quasi-contract to the dockage transaction at issue, and thus erred in failing to find that the plaintiff’s dock facilities are a benefit to the barges that use them, and that the use of the dock without payment constitutes an unjust enrichment to the defendants.”
We have considered these specifications of error assigned by plaintiff and find that the trial court, with written reasons assigned, adequately and correctly adjudged the plaintiff’s claim. We herein quote the trial judge’s written reasons and adopt them in full.
“FINDINGS OF FACTS
“1. Bunge Corporation, a New York corporation, qualified to do and doing business in Louisiana, is engaged in buying and selling grain. As a part of this business, Bunge Corporation owns a grain elevator facility at Destrehan, Louisiana. This facility includes a dock at which grain barges from up the Mississippi River system must dock in order to discharge the grain which Bunge Corporation has purchased or ordered from various upriver shippers.
“2. The defendants herein, Federal Barge Lines, Inc., Valley Barge Line Company, and Sioux City and New Orleans Barge Lines, Inc., are foreign corporations, doing business in Louisiana. The defendants are all certified by the Interstate Commerce Commission as common carriers.
“3. Bunge Corporation began operating the grain elevator and wharf facility at Destrehan, Louisiana, in September, 1961. At that time it issued a schedule of charges to be charged against vessels (including barges) which used the dock facilities. (See Bunge Exhibit No. 1) Although this schedule was given the name ‘Dock Tariff No. 1), it was a private publication, not subject to State or Federal regulation, nor required by State or Federal statutes. The said schedule and subsequent supplements were sent by Bunge Corporation to all barge and steamship companies, and their agents, including the defendants. In conjunction with this schedule of charges, Bunge Corporation prepared standard forms entitled, ‘Applications for Berth’. (See Bunge Exhibit No. 2) Copies of this standard form were sent to all barge and steamship companies and their agents who would have occasion to use the facilities, including the defendants.
“4. The said schedule of charges provided as follows on the subject to dockage:
‘The signed application for berth, when acknowledged in writing by the elevator, *733 shall constitute a contract between Bunge Corporation and the vessel and her owners and agent to abide by the charges and regulations of this tariff.’
$ $ $ * $ *
‘SECTION II
‘A The following dockage charges shall be assessed against and be payable by all vessels and barges and shall apply during the time the vessel or barge is tied alongside the dock, whether working or not.
‘2. Barges:
‘$20.00 per barge for loading or unloading, regardless of time involved.’
“Bunge Exhibit No. 1 p. 1 + p. 5.
“5. During the period of time at issue in this litigation, 1961 through 1966, the three defendant barge lines submitted to the plaintiff the forms provided to them for a portion of the total number of their barges which had moored at the Destrehan facility. In truth and in fact, many of the defendants’ barges had been unloaded there before written applications, if any, were submitted by the defendant barge lines. Oral arrangements for docking at the facility were permitted by Bunge Corporation.
“6. Of the instances where written forms were completed by the defendant barge lines, all were so completed by stenographic clerks in the employ of defendants who held no responsible office in their respective corporate structures, and who were not authorized to bind the defendents. In some instances, particularly those which involved Sioux City and New Orleans Barge Lines, Inc., an independent fleeting company, Point Landing, Inc., which was in no way related to the barge company, arranged for the placing of the barges at Bunge Corporation’s Destrehan facility.
“7. The plaintiff, Bunge Corporation, submitted invoices to the defendant barge lines for dockage fees on their barges in accordance with the schedule of rates published by them. The defendant barge lines refused to pay the charge in every instance.
“8. All barge shipments at issue in this case were transported subject to the provisions of the laws of the Federal government with regard to common carriers, without exemption under 49 U.S.C. § 903(b).
“CONCLUSIONS OF LAW
“This Court entertains this action in personam against the defendant barge companies as owners or charter parties of certain enumerated barges. Although the plaintiff, Bunge Corporation, might have properly brought this action in rem at Admiralty in the Federal District Court, it exercised its option to seek the in person-am remedy before this Court. That the owner of a dock may seek an in personam remedy for dockage charges is clearly established by case law. Ex Parte Easton, 95 U.S. 68 [, 24 L.Ed. 373] (1877). In essence, the plaintiff contends that the defendants owe $20 per barge as dockage charges for barges which used the wharfs from 1961 to 1966. The defendants contend that they do not owe these charges and offer three main objections to the claim. Their first objection is that paying dockage charges at private wharfs is an issue within the primary jurisdiction of the Interstate Commerce Commission. The second objection is that no contract was in existence whereby the defendants agreed to pay dockage charges. Finally, the defendants urge that no quasi-contractual liability based on unjust enrichment was applicable.
“Although the facts of this case necessarily involve a practice which would in of itself be in the primary jurisdiction of the Interstate Commerce Commission, the issue as joined before this Court, i. e., contract — is within the primary jurisdiction of *734 this Court and the laws of this State. The defendants have conceded that under the authorities cited to this Court by plaintiff that the claimed dockage charge is not subject to regulation by the I.C.C. In Greater Baton Rouge Port Commission v. American Barge Line Company, 29 I.C.C. 736 (1957), the complainant sought to enforce dockage fees against the barge line. The I.C.C., in declining jurisdiction, noted that the Port Commission was not required to submit a tariff to the I.C.C. and further that the Port Commission was not subject to the authority of the I.C.C. This opinion is in holding with previous decisions by the I.C.C., as cited in the text of that opinion. This Court is unable to distinguish between the issue before it in the present case, and that considered in the Greater Baton Rouge case. Therefore, it is the conclusion of this Court, having considered the reasoning in the above cited case and those cited in that case, that the I.C.C. does not have the primary jurisdiction of the case such as would preclude consideration by the Court of the controversy before it.
“The sole question before the Court is whether the defendants are indebted to the plaintiff by reason of an alleged contract according to the terms of which the plaintiff was to supply dockage at the rate of twenty dollars per barge. Under the facts presented to the Court and in light of the applicable State and Federal law, it is this Court’s conclusion that no contractual or quasi-contractual basis for the claim exists and it is, therefore, dismissed.
“The plaintiff constructed a grain elevator together with a wharf to service the elevator at Destrehan, Louisiana. Since the cost of construction and maintenance at this facility was high, it sought to charge vessels using this facility a fee to help defray expenses. The defendants were notified upon the opening of the elevator that the plaintiff would charge wharf-age or dockage at the rate of $20 per barge. The defendants, all of whom are common carriers, protested the charge, refusing to pay same upon receipt of invoices. Ignoring the repeated protests by defendants, the plaintiff continued to invoice the defendants for each barge. The defendants continued to protest. The plaintiff has placed some reliance on a standard form which it prepared and distributed to the defendants and others. This form is presented as evidence of the contractual obligation. This Court is not impressed by this form. According to the uncontroverted testimony, these applications were not an absolute requirement, but were often after the fact memos, and in some cases non-existent since oral docking arrangements were received and acted upon by the plaintiff. Under such circumstances, the existence of such forms, signed as they were by mere stenographic clerks, cannot be construed as signifying consent to the contract, particularly since the defendants protested these charges ab initio to the present date.
“Louisiana Revised Civil Code Article 1779 establishes four elements necessary for a valid contract among which are a lawful purpose, and consent of the parties.
“Although it is clear that dockage fees are not prohibited by law, Cannon v. New Orleans, 20 Wall, 577 [, 22 L.Ed. 417] (1874), this Court cannot define any act of the defendants as one of consent. Had these carriers not been subject to the Law with regard to common carriers, they might have refused any shipment. However, this Court has determined that the defendants were regulated common carriers in the absence of evidence to qualify them as exempt under 49 U.S.C. § 903(b). The burden of proving such exemption is admittedly so high as to render the exemption almost impossible. (See Gulf Canal Lines, Inc. v. United States, (D.C.Tex.1966), 258 F.Supp. 864; American Barge Lines Company, Petition for Declaratory Order, 294 I.C.C. 796.) As regulated common carriers, they are bound to accept for shipment all goods, except when *735 they lack facilities (49 U.S.C. § 905). It is the uncontroverted testimony of defendants’ able witness, Mr. Irwin Strobel, that such deficiency would be extremely rare. Additionally, refusal to service plaintiff even if legal, would be precluded many times when the carrier is not notified of the ultimate consignee until after the barge is underway.
“The plaintiff also seeks, in the alternative, a recovery based in quasi-contract for quantum meruit as provided for in La. R.C.C. Articles 1816, 2292, and 2294. This claim is without substantial merit. The contracts of affreightment involved herein do not contemplate the use of any wharf. The defendants, under the terms of the af-freightment contracts and the terms of their tariff, only provide for movement of filled barges from the wharf of origin to the wharf of destination. The defendants in no way ‘use’ the wharf per se. They are only obligated to ‘spot’ the barge at the wharf designated by the consignee — which in this case is the owner and operator of the wharf. The plaintiff would have the mere presence of a wharf constitute a service to the vessel. This is false reasoning. There is no benefit attaching to the vessel by reason of the wharf. The benefit involved in placing the barge at plaintiff’s wharf accrues solely to the plaintiff. The claim is akin to a store owner who seeks to charge his suppliers for parking at his back door in order that merchandise ordered by the store may be delivered. The failure of the plaintiff to demonstrate by a preponderance of the evidence that an agreement to pay was implicit in the facts defeats his claim.
“The plaintiff’s claim of the defendants’ liability for the barges of subsidiary corporations, not parties herein, need not be considered since no contract existed.”
For these reasons, the judgment appealed from is affirmed, at plaintiff’s cost.
Affirmed.